UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-61902-BLOOM

JEFFREY EMIL GROOVER,
individually and on behalf of
all others similarly situated,

       Plaintiff,

v.

U.S. CORRECTIONS, LLC;
PRISONER TRANSPORTATION
SERVICES, LLC; and JOHN DOES
1-100,

       Defendants.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Plaintiff Jeffrey Emil Groover submits this reply in support of his motion for class certification ("Mtn" or "Motion"), ECF No. 108, and in response to Defendants U.S. Corrections, LLC ("USC") and Prisoner Transportation Services, LLC ("PTS")'s opposition briefs, ECF Nos. 130 ("Opp." or "Opposition"), 131.  Plaintiff's motion should be granted in its entirety.

**INTRODUCTION**

Each Rule 23 requirement is met.  The class consists of likely hundreds of identifiable pretrial detainees who have been (or will be) transported by Defendants under uniform conditions of confinement: same windowless vans, same dog cages, same defunct A/C, same time period, same extreme heat, same deprivation of water and air, all imposed by uniformly undertrained staff pursuant to Defendants' same derelict policies and practices.  Every claim thus turns on a single predominant common issue:  Whether those uniformly deplorable conditions violate the Constitution.  On these straightforward facts, class certification is plainly superior to any alternative.

With no real counter, Defendants resort to muddling basic legal concepts, hoping confusion leads the Court into error.  Defendants' opposition does not stand up to scrutiny.  Cases like this are

routinely certified. Plaintiff was transported as a pretrial detainee. He has class standing and Article III standing. Damages issues cannot defeat class certification. The Eighth Amendment sets a higher (not lower) standard, and the Eleventh Circuit already held Plaintiff's claims meet that higher standard. No administrative remedy exists; even if it did, Defendants waived any failure to exhaust defense several times over. Each of Defendants' muddled arguments is debunked below.

Because all requirements of class certification are met, Plaintiffs' motion for class certification should be granted in full.

## PROPOSED CLASS DEFINITION

Plaintiff seeks certification of the following class pursuant to Rules 23(a), (b)(2), (b)(3), and (g):

> All persons in the United States who, between October 12, 2012 and the date of the Court's order granting class certification, were transported as a pretrial detainee by Prisoner Transportation Services, LLC or any of its affiliates or subsidiaries, including U.S. Corrections, LLC, in a "dog-cage"-equipped van for twenty-four (24) or more hours, at any time during the months of June through September, through at least one location with an outdoor temperature of at least 80 degrees Farenheit, as measured by a judicially-noticeable source.[1] (hereinafter, the "Proposed Class").[2]

## ARGUMENT

The Proposed Class satisfies all the requirements of Rule 23 and should be certified on both an injunctive relief and damages basis pursuant to Rules 23(b)(2) and 23(b)(3).

### I. The Class Should Be Certified Under Rule 23(b)(2)

The propriety of certification under Rule 23(b)(2) could not be clearer. Defendants only opposition is cursory denial. Opp. at 18 (no analysis, simply proclaiming no "uniform policy or practice" exists). Defendants ignore the record, and thereby directly contravene both their own manuals and other documents detailing uniform policies and practices and the corroborating

---

[1] *See* Mtn at 1, n.2 (exclusions from class definition).
[2] The "June through September" temporal limitation in the class definition, though pled in the operative complaint, was, due to clerical error, inadvertently omitted from Plaintiff's opening brief. Still, Defendants have been on notice of this limitation for many months. *See* ECF No. 36 (operative complaint).

testimony by their own former employees. *See, e.g.,* ECF No. 108 at 3-8 (citing, *inter alia*, Defendants' Prisoner Transportation Manual and corroborating testimony of former employee John A. Stirling). The evidentiary record shows that Defendants' uniformly deficient policies and practices systematically imposed the same deplorable conditions of confinement across the class. *See Anderson v. Garner*, 22 F. Supp. 2d 1379, 1386 (N.D. Ga. 1997). Plaintiff primarily seeks injunctive relief to correct these "systemic failures" - the quintessential basis for a Rule 23(b)(2) class. *See Hunter v. Beshear*, 2018 WL 564856, *7 (M.D. Ala. 2018) (where prisoners "complain [of] *systemic* failure" and "seek transformation of that system," "certification pursuant to subpart (b)(2) is appropriate"); *Thomas v. Baca,* 231 F.R.D. 397, 403 (C.D. Cal. 2005) (same). The case is thus ideally suited for certification under Rule 23(b)(2).

## II.     Plaintiff is Typical and Adequate

Defendants' typicality and adequacy challenges reduce to a faulty premise: that Plaintiff would somehow lack Article III standing if not a member of the class. That reflects Defendants' basic misunderstanding of distinct legal concepts: Article III and class standing are not the same. Regardless, Plaintiff has both and is a member of the class, and, moreover, is typical and adequate. Thus, Defendants' errors, while inexcusable, are inconsequential here. Still, each is corrected below.

Article III standing is a matter of subject-matter jurisdiction, independent of the merits (*e.g.*, whether or not Plaintiff is a pretrial detainee) and procedure (*e.g.*, whether or not to certify the class). *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). It limits federal jurisdiction to "cases or controversies" by requiring a plaintiff who: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant;[3] and (3) that is likely to be redressed by a favorable judicial

---

[3] Defendant PTS simply parrots Defendant USC's arguments, except to additionally argue that Plaintiff's injuries are not traceable to PTS because its acquisition of USC occurred after Plaintiff's injuries. *See* ECF No. 131. Wrong. As explained Plaintiff's opposition to judgment on the

decision.  *Id.*  Plaintiff clearly satisfies each: he suffered physical, mental, and emotional injuries as a result of Defendants' unconstitutional policies and practices and through this action seeks injunctive and other relief to redress those policies and practices.  No more is necessary under Article III.  That this is a putative class action changes nothing.  Indeed, these threshold Article III jurisdictional requirements would apply just the same whether the action was brought instead as an individual action, derivative action, or any other sort of federal action.  *See, e.g., Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action, however, adds nothing to the question of [Article III] standing.").  Thus, contrary to Defendants' contention, Plaintiff's Article III standing is both obvious and completely inapposite to whether he falls within any particular class definition.

What Defendants confuse for Article III standing is rather "class standing," - "that is, standing to assert claims on behalf of [a class]." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*, 693 F.3d 145, 158 (2d Cir. 2012).  This distinct concept of class standing "**does not turn on whether [Plaintiff] would have . . . Article III standing**." *NECA*, 693 F.3d at 158 (some emphasis in original); *Melendres v. Arpaio*, 784 F.3d 1254, 1262-64 (9th Cir. 2015) (explaining that class standing "raises the question of class certification . . . **not a question of [Article III] standing**."); *In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 2797267, at *12 (N.D. Ala. 2017) (explaining that courts in the Eleventh Circuit follow the same "class certification approach" as *Melendres*).  Rather, it depends on whether Plaintiff's claims raise a "sufficiently similar set of concerns" as those of other class members.  *NECA*, 693 F.3d at 164.  In other words, it presents the exact question Rule 23

---

pleadings, PTS is not liable merely as a parent but rather is "**directly liable as a successor in interest** because it expressly or impliedly assumed [USC's] liabilities, the Acquisition constitutes a *de facto* merger, and the subsidiary is a mere continuation of [USC]."  *See* ECF No. 77.

itself is designed to answer. As detailed in Plaintiff's opening brief, each Rule 23 requirement is met; thus, Plaintiff's claims raise a "sufficiently similar set of concerns" and he has "class standing." *Id.*

Plaintiff is also plainly a member of the proposed class. *Cf.* Opp. at 6-7. His claims arise from being transported as a pretrial detainee under deplorable conditions of confinement. As countless courts have explained, even convicted prisoners (including those on parole or probation or, like Plaintiff, transported to face trial on new charges) nevertheless qualify as "pretrial detainees" while in custody awaiting or en route to trial on new charges unrelated to their prior conviction and incarceration. *See infra.* This makes sense because the conditions of custody or transport necessitated by the trial on new, unrelated charges have "less to do with his prior conviction or his status as a parolee, and more to do with the new separate crime for which he [i]s being held. . . [but] for which he ha[s]n't been convicted." *Dannebaum v. County of San Diego*, 2016 WL 2931114, at*3 (S.D. Cal. 2016) (holding parolee alleging Section 1983 claims was "pretrial detainee" while in custody awaiting trial on new charges because that "incarceration had . . . more to do with the new separate crime . . . for which he hadn't been convicted"); *Turner v. White*, 443 F. Supp. 2d 288, 294 (E.D.N.Y. 2005) ("Just because someone has been convicted of a crime in the past . . . does not deprive him of his . . . constitutional right[s] . . . in connection not with [his prior] conviction but rather with some new offense or violation" for which he has not yet been convicted); *Towlsey v. Frank*, 2010 WL 5394837, *5-*6 (D. Vt. 2010) (same).[4]

---

[4] *Accord Freeland v. Sacramento City Police Dep't,* 2010 WL 408908, at *12 (E.D. Cal. 2010) (parolee considered pretrial detainee because "[a]lthough . . . on parole at the time the events alleged took place, ... the alleged excessive us[e] of force by the defendants took place during the course of . . . arrest on a suspected parole violation for which he had not yet been convicted or sentenced"); *Comfort v. Jackson Cnty.,* 2010 WL 2817183, at *3 (D. Or. 2010) (parolee subject to pretrial detainee standard); *Williams v. Cnty. of Riverside,* 2008 WL 4791291, at *7 (C.D. Cal. 2008) (plaintiff was pretrial detainee because "claim of excessive force arose while he was a 'parolee at large . . . [and] plaintiff has not yet been convicted or sentenced" of new charge); *Blake v. Base,* 1998 WL 642621, at *10 n. 21 (N.D.N.Y. 1998) (parolee subject to pretrial detainee standard).

5

Same here. Plaintiff's claims arise entirely from the conditions under which he was temporarily released and transported to a different jurisdiction to face new charges he had not yet been convicted of. Neither the claims themselves nor the challenged conditions of transport have anything to do with his prior conviction, sentence, or related incarceration. As such, on the claims at issue in this case, Plaintiff's prior conviction "does not deprive him of his . . . constitutional rights" as a pretrial detainee. *Turner*, 443 F. Supp. 2d at 294.

### III. The Class is Numerous and Ascertainable

Defendants misconstrue numerosity and ascertainability. *See* Opp. at 12-14, 9-12. Admittedly, Defendants have already transported hundreds (if not thousands) of prisoners and pretrial detainees under similarly deplorable conditions. More are transported every day. All in the same windowless, dog-cage, defunct-A/C vans over 24 hours at a time through the hottest months of the year. And all are readily identifiable from Defendants' own records (albeit records Defendants continue to improperly withhold from Plaintiff).[5] The Court can reasonably infer a sufficient number of pretrial detainees (out of over a thousand, surely more than 40) from those already transported plus the hundreds more that will be transported in the future. Nothing more is required. *See Hunter*, 2018 WL 564856, *4 (in civil right class actions numerosity is "less significant," for "the number of current class members is supplemented by an additional number of future class members.").

Defendants' reliance on *Secreti v. PTS of America, LLC*, is misplaced. *See* Opp. at 9-10 (citing 2015 WL 3505146 (M.D. Tenn. 2015)). *Secreti* involved excessive force claims not at issue here, and,

---

[5] Defendants' discovery strategy has been intransigence and delay. *See* ECF 139 (recounting same). On June 25, 2018, Magistrate Judge Alicia O. Valle ordered Defendants to produce a host of improperly withheld documents plainly relevant to class certification, *inter alia*, numerosity and ascertainability. ECF No. 122. Defendants have failed to comply, instead filing a baseless "emergency" objection. ECF No. 127. Plaintiff reserves his right, and hereby requests leave, to supplement his class certification briefing with a sur-reply once Defendants comply with Judge Valle's order and produce all improperly withheld documents.

further, proposed a shockingly overbroad class spanning prisoners to mental hospital inmates to immigrant detainees to juvenile detention committees and more. 2015 WL 3505146, at *1. There, unlike here, the claims turned on varying justifications for a range of conditions (not the conditions themselves), and thus required a balancing of the individual circumstances of each category of class member against the unique penological justifications across each of the array of distinct institutions (immigrant detention versus prisoner versus mental hospital and so on). *Id.* Certification was denied because the class attempted to cover widely "different classifications of inmates, different circumstances and different interests." *Id.* at *3. In contrast, here, the class is limited to a single classification – pretrial detainees; a single set of conditions (same van, same cage, etc.); and single category of claim (uniform condition s of confinement) that does not turn on varying penological interests. Moreover, better-reasoned courts have rejected *Secreti* as unpersuasive. *See, e.g., Gentry v. Floyd County*, 313 F.R.D. 72 (S.D. Ind. 2016). As explained in *Gendry*: "Courts routinely address conditions of confinement claims in class actions. This is especially true where, as here, the conditions stem from [] policies or practices that are uniformly applied to all inmates . . . notwithstanding any individual damages determinations, the constitutionality of the Defendants' [] policy and practice will be the predominate factor in determining liability." 313 F.R.D. at 80-81.

      Defendants' attempt to circumscribe the class definition by the extent of damages, *e.g.*, Opp. at 12, 14, contravenes black letter law: "[I]ndividual damages calculations do not preclude class certification." *Carriulo v. General Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016); *see also Brown v. Electrolux home Products, Inc.*, 817 F.3d 1225,1239 (11th Cir. 2016) (noting this "black letter rule recognized in every circuit"); *accord Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 987 (9th Cir. 2015) ("damage calculations alone cannot defeat class certification"); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013) ("the fact that damages are not identical across all class members should not preclude class certification."). Defendants make no showing how damages –

which will be proved with common evidence – somehow present individualized issues. Even if they had, it would pose no real obstacle, as courts in class action proceedings routinely fashion procedures to accommodate any individualized damages calculations. *See, e.g., Brown*, 817 F.3d at 1239 ("District courts have many tools to decide individual damages").

And because the proposed class is limited to transports during the months of June through September, Defendants' harping of transport in November is completely irrelevant. *See, e.g.*, Opp. at 11. Even if claims arising from November were relevant, a class definition is not rendered "arbitrary" simply because membership alone "does not in and of itself demonstrate that USC violated the class member's Constitutional rights." *Cf. id.* at 10. As it must, the class here is defined in objective factual terms–temperature, length of time, type of equipment, etc. – not by the ultimate legal elements of class members' claims. Were the class instead defined by the merits, as Defendants' suggest, it would create an impermissible fail-safe class where "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *JWD Automotive, Inc. v. DJM Advisory Group, LLC*, 218 F.Supp.3d 1335, 1342 (M.D. Fla. 2016).[6] The class is properly defined.

### IV. Common Questions Predominate

The predominant issue is this: Whether the alleged conditions of confinement violate the Constitution. *See* Mtn. at 17-18. Nothing on the periphery can change that. Still, even were that

---

[6] Class membership never depends on whether particular class members will succeed on the merits of particular claims. *See Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ("Rule 23's certification requirements neither require all class members to suffer harm or threat of immediate harm nor Named Plaintiffs to prove class members have suffered such harm."). Rule 23 requires common questions, "not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013).

prime overarching question somehow not enough, numerous additional common questions bolster predominance. *See* Mtn. at 18-19. Where, as here, "'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, _U.S._, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)). As explained below, Defendants' attempt to manufacture fringe issues falls flat.

Because Plaintiff was transported as a pretrial detainee (and thus is member of the proposed class), *see supra*, Defendants' focus on the Eighth versus Fourteenth Amendments completely misses the mark. It also highlights another basic error by Defendants. From the faulty premise that Plaintiff is not a pretrial detainee, Defendants argue thus that Plaintiff "is **only** entitled to Eighth Amendment, **not** Fourteenth Amendment, protections." Opp. at 7 (some emphasis in original). Defendants have well-settled law exactly backward: The Eighth Amendment sets a standard not below but rather above and beyond the lower standards set by the Fourteenth Amendment. *See Youngberg v. Romeo,* 457 U.S. 307, 315 (1982) (conditions that violate Eighth Amendment necessarily violate lower standards of Fourth and Fourteenth Amendments); *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) ("[A]nything that would violate the Eighth Amendment would also violate the Fourteenth Amendment."). The Eleventh Circuit already held that (if proven at trial) the alleged conditions of confinement imposed by Defendants' policies and practices constitute violations of the higher Eighth Amendment standard. *See Groover v. U.S. Corrections, et al.*, No. 15-14813, Apr. 4, 2017, Op. at 9 (11th Cir.) Thus, the answer to a single common question – whether the alleged conditions violate the Eighth Amendment - can resolve all lower violations in one stroke. *See Gentry*, 313 F.R.D. at 79 ("the fact that the class contains both pre-trial detainees and convicted

prisoners is not an impediment to certification, as each member of the putative class will have to prove the same facts . . .").

Nor does Defendants' newfound (but unpled) affirmative defense of failure to exhaust administrative remedies present individualized issues simply because some class members may have been released from custody. *See, e.g.*, Opp. at 17, 19.  That defense could only apply if Defendants had established the existence of an available and adequate administrative remedy. *Turner v. Burnside,* 541 F.3d 1077, 1085 (11th Cir. 2008) ("A remedy has to be available before it must be exhausted"). Here, however, Defendants have made no showing that any administrative remedy even exists, much less one sufficient to carry their affirmative defense.  Even if they had, any such defense has been uniformly waived several times over.  *Brooks v. Warden,* 2017 WL 3669417, at *2 (11th Cir. 2017) (failure to exhaust is waived if not raised in first responsive pleading).  Both USC and PTS waived any failure to exhaust defense at least three times over: First, they defaulted in response to the First Amended Complaint, failing to file any timely Rule 12 response (much less that pled this affirmative defense), *see* ECF No. 42; Second, they failed to assert the defense in their untimely answers filed two weeks late, see ECF No. 43; Third, yet again by failing to assert the defense in their amended answers, ECF Nos. 61, 62.  As to PTS, the defense has been waived four times over, because PTS also failed to raise the defense in its motion for judgment on the pleadings, *see* ECF No. 71.

Because Defendants present no evidence that any administrative remedy even exists, and, in any event, have already waived any defense thereon several times over, that no related individualized issues can preclude class certification here.  *See* Mtn. at 19, n.17 (citing civil rights class actions where predominance satisfied despite potential defense of failure to exhaust administrative remedies).

## CONCLUSION

For all these reasons, Plaintiff's motion should be granted in full.

Dated: July 9, 2018

Respectfully submitted,

### Hedin Hall llp

By: s/ Frank S. Hedin
FRANK S. HEDIN (SBN 109698)
DAVID W. HALL*
fhedin@hedinhall.com
dhall@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

VANESSA SHAKIB (pro hac vice)
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, CA 90023
Tel: (310) 474-9111
vshakib@ahdootwolfson.com

* PHV Application Forthcoming

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2018, a true and correct copy of the foregoing was served via the Court's CM/ECF filing system on counsel of record in this action.

/s/ Frank S. Hedin
FRANK S. HEDIN
