JEFFREY EMIL GROOVER,

      Plaintiff,

vs.

PRISONER TRANSPORTATION SERVICES, LLC
and U.S. CORRECTIONS, LLC.

      Defendants.

_____/

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS CAUSE** is before the Court upon Defendant Prisoner Transportation Services, LLC's ("PTS") Motion for Judgment on the Pleadings, ECF No. [71] (the "Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

Plaintiff, Jeffrey Emil Groover ("Groover"), filed this action, individually and on behalf of all others similarly situated, against PTS, U.S. Corrections LLC ("USC"), and John Does 1-100 alleging civil rights violations pursuant to 42 U.S.C. § 1983. ECF No. [36]. In the Amended Complaint, Groover, an inmate at the Butner Low Security Federal Correctional Institution in Butner, North Carolina, alleges that between August 14, 2015 and August 16, 2015, USC transported him from Butner, North Carolina to Fort Lauderdale, Florida in a windowless transport van lacking sufficient ventilation and air conditioning. *Id*. at. ¶ 6. Groover claims that he was deprived of sleep, water, and refuge from the heat. *Id*. at ¶ 6. As a result of the purported

excessively hot conditions and lack of adequate ventilation in the van, Groover experienced physical, mental, and emotional exhaustion as well as a heat stroke. *Id*. at ¶ 6. According to the Amended Complaint, USC knew of the conditions to which Groover was subjected and failed to take appropriate measures. *Id*. at ¶ 30. Groover also states that numerous other pretrial detainees that USC and PTS transported suffered similar inhumane conditions and harm as a result of their transportation practices. *Id*. at. ¶ 28. Groover alleges that these conditions violate his and other pretrial detainees' Eighth and Fourteenth Amendment rights. *Id*. at ¶ 8.

Significantly, Groover alleges in the Amended Complaint that USC transported him in its van. *Id*. at ¶ 6. Groover does not claim that PTS was involved in his transportation. Instead, he states that fifteen months after the alleged incident occurred, in November of 2016, the Surface Transportation Board approved PTS' acquisition of USC. *Id*. at ¶ 16, n. 5. Since November of 2016, Groover claims that USC has operated as a wholly-owned subsidiary of PTS. *Id*. at ¶ 21. In Count I, Groover, individually, asserts a claim for a violation of his Eighth and Fourteenth Amendment rights against all Defendants pursuant to 42 U.S.C § 1983. *Id*. at 24. In Count II, Groover, filed the same claim against Defendants on behalf of the putative class members. *Id*. at 26.

At issue now is PTS' Motion for Judgment on the Pleadings in which PTS requests the entry of final judgment in its favor. ECF No. [71]. In support of the Motion, PTS argues that it is not liable as a matter of law for the actions of USC – the entity that transported Plaintiff. *Id.* With regard to Count I, PTS argues it did not acquire USC until after the incident occurred and it cannot be directly liable. *Id.* Further, it cannot be liable for USC's actions as Groover failed to allege facts to pierce the corporate veil or disregard the well-established principle that a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities. *Id*. at 8. As

to Count II, PTS argues that PTS did not transport Groover and did not, therefore, injure Groover. As a result, Groover cannot be a member of the putative class injured by PTS' transportation practices, lacking standing to bring a class action lawsuit against PTS. *Id*. at 11. In addition, as to PTS' request for judgment on the pleadings regarding the claim for injunctive relief, PTS argues a party cannot seek equitable relief unless it proves "real and immediate harm." *Id.* Because Groover's transportation occurred in the past, PTS states that he lacks standing to seek equitable relief and, in any event, the request is now moot.

In response, Groover denies that his claim against PTS is based on vicarious liability and instead alleges that PTS is directly liable under a successor-in-interest theory of liability. ECF No. [77]. Groover supports this position by alleging that: (1) PTS assumed all of USC's assets and liabilities in the merger; (2) PTS' acquisition of USC constitutes a *de facto* merger; and (3) as PTS' subsidiary, USC remains a mere continuation of its predecessor business. *Id*. at 3. As to Count II, Groover claims that PTS is directly liable for his harm and he has, therefore, sufficiently established PTS' Article III standing and membership within the putative class. *Id*. at 12. Regarding PTS' argument seeking judgment on the pleadings on his request for equitable relief, Groover argues that equitable relief is a remedy, not a claim, and a judgment cannot be entered on a remedy. Even if it could, Groover argues that he has alleged a real and immediate harm of future transportation, satisfying the standing necessary for a claim for injunctive relief.

In its Reply, PTS refutes Groover's successor–in-interest theory of liability. ECF No. [78]. Specifically, PTS argues that neither Groover's Amended Complaint nor the exhibits he references in his pleading demonstrate that PTS acquired USC's liabilities. *Id*. at 4. Furthermore, PTS argues that there was no *de facto* merger between PTS and USC because the exhibits demonstrate PTS' formal acquisition of USC, which in turn made USC the wholly-

owned subsidiary of PTS. ECF No. [78-1] at 1. Furthermore, PTS argues that it is not a mere continuation of USC because PTS and USC remain separate, distinct entities independent of one another. *Id*. at 7.

While the Motion was pending, Plaintiff sought leave to file supplemental materials in further support of his Response consisting of documents that were recently produced in discovery. *See* ECF No. [115]. PTS did not object to supplementing the record as such documents were central to Plaintiff's claims against PTS and were undisputed. ECF No. [118] at 1. PTS further argued that such documents "corroborate and further support PTS' position that it is entitled to entry of judgment on the pleadings . . ." *Id*. The Court thereafter granted Plaintiff leave to file the documents, which were filed under seal. *See* ECF No. [121] and [123]. The Motion is now ripe for adjudication.

## II. LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A party may move for judgment on the pleadings if there are no material facts in dispute. *See Palmer & Cay, Inc. v. Marsh & McLennan Cos.,* 404 F.3d 1297, 1303 (11th Cir. 2005); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1291 (11th Cir. 2002). In rendering judgment, a court may consider the substance of the pleadings and any judicially noticed facts. *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). "A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011). As such, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Through this lens, the Court considers the instant Motion.

## III.   DISCUSSION

PTS seeks judgment in its favor on all claims Groover asserts in the Amended Complaint on behalf of himself and the putative class. ECF No. [71].  As explained above, the Motion challenges Plaintiff's claims as to Count I, Count II, and his request for injunctive relief.  The Court will address each argument in turn.

### a.  Count I

With regard to Count I, PTS argues that, under Florida law, there are three ways in which a parent corporation can be held liable for the acts of its subsidiaries: "(1) an alter ego theory to 'pierce the corporate veil;' (2) vicarious liability based on general agency principles; or (3) direct liability where the parent corporation directly participated in the wrong complained of."  *Id*. at 8.  PTS argues that the Amended Complaint is devoid of such allegations, requiring the entry of judgment in its favor.  *Id*. at 9.  In response, Groover does not address or otherwise contest PTS's argument of vicariously liability.  Instead, Groover argues that judgment on the pleadings should be denied because PTS is directly liable under three successor-in-interest theories of liability: (1) express or implied assumption of liabilities; (2) *de facto* merger; and (3) mere continuation of a predecessor business.  *Id*. at 4.  While Florida law generally does not impose liabilities of a

predecessor corporation on a successor corporation, Plaintiff is correct in stating that an exception applies when "(1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a *de facto* merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Murphy v. Blackjet, Inc.*, No. 13-80280-CIV-HURLEY, 2016 WL 3017224, at *4 (S.D. Fla. May 26, 2016) (citing *Bernard v. Kee Mfg. Co. Inc.,* 409 So. 2d 1047, 1049 (Fla. 1982)). "The imposition of successor liability, as the exception to the general rule, is based on the equitable principle that no corporation should be permitted to commit a tort or breach of contract and avoid liability through a corporate transformation in form only." *Id.* (citing *Amjad Munim, M.D., P.A. v. Azar, M.D.,* 648 So. 2d 145, 154 (Fla. 4th DCA 1995)). The Court will, therefore, address each of the three theories of liability Plaintiff advances against PTS.

### i. **Express or Implied Assumption of Liability**

Plaintiff first contends that, through its acquisition of USC, PTS expressly or impliedly assumed its liabilities. Specifically, Plaintiff points to the documents referenced in the Amended Complaint in which PTS represented to the Surface Transportation Board that it was acquiring "all the interest" in USC, and Plaintiff argues that nothing within the documents disclaimed any obligation of USC. *See* ECF No. [77] at 7. While the Motion was pending, Plaintiff also supplemented the record with more than 200 pages of additional documents – documents that PTS contends further support its position that it is entitled to entry of judgment on the pleadings. *See* ECF Nos. [118], [121]. Both parties ask the Court to consider these documents in connection with its ruling on the Motion, but neither of them direct the Court to specific portions of such documents or otherwise explain their significance. "[J]udges 'are not like pigs, hunting for truffles buried in briefs.'" *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th

Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). District courts are not required to comb through the record looking for facts that the parties could have brought to its attention as such a practice "would shift the burden of sifting from [the parties] to the courts." *Id.* "With a typically heavy caseload and always limited resources, a district court cannot be expected to do a [litigant's] work for him." *Id.*

Despite the parties' failure to explain the significance of the supplemental documents, the Court has endeavored to review them. Specifically, the record contains a document entitled "Contribution Agreement for Membership Interest in [PTS]." ECF No. [121-1]. Within the section entitled "Purchase of Membership Interest," the document provides that the members of USC, a limited liability company, agreed to purchase specified percentages of interest in PTS and that PTS, in turn, acquired all shares belonging to the USC members along with all tangible assets used or useful in USC's business operations. *Id.* at 3. The Contribution Agreement refers to the acquisition of this property as the "Contributed Property." *Id.* at 4. The Contribution Agreement also contains a section entitled "Representations and Warranties Regarding the Contributed Property," which provides that all representations and warranties that USC's members made in Annex A to the agreement form part of the "Contributed Property" that PTS was acquiring. *Id.* at 6. Included in Annex A is a section entitled "Litigation" containing a disclosure of all pending or threatened investigations, actions or proceedings against USC. *Id.* at 10-11. More specifically, USC's members warrant to PTS that "there is no pending . . . [or] threatened investigation, action, or proceeding against USC by or before any court . . . Except as disclosed on Schedule 1.08." *Id.* Schedule 1.08, in turn, makes multiple disclosures. *Id.* From these documents, an inference can be made that the "Litigation" disclosure is part of the "Contributed Property" that PTS acquired. As the legal standard of a motion to dismiss is

similar to that of a judgment on the pleadings and the Court is, therefore, required to accept all allegations in the Amended Complaint as true and draw all inferences in Plaintiff's favor, the supplemental evidence creates an inference that PTS assumed USC's liabilities.  *See Winn-Dixie Stores, Inc. v. LJD & A Corp.*, No. 3:13-cv-1172-J-34JRK, 2014 WL 4373369, *4 (S.D. Fla. Sept. 3, 2014) (finding that successor corporation was liable for the predecessor's debts when the complaint alleged that the predecessor corporation expressly assumed certain liabilities in the purchase agreement); *Coral Windows Bahamas, LTD v. Pande Pane, LLC*, No. 11-22128-Civ, 2013 WL 321584 at 4 (S.D. Fla. Jan. 28, 2013) (finding that issues of material fact existed as to whether successor in interest assumed the liabilities of its predecessor when the asset purchase agreement assumed several liabilities, such as  accounts payable, accrued expenses, and warranty claims, among others); *Mana Internet Solutions, Inc.* v. *Internet Billing Co*., No. 06-61515-CIV-COOKE/BROWN, 2007 WL 1455973, *2 (S.D. Fla. May 16, 2007) (denying motion to dismiss when the complaint alleged that successor corporation took control of predecessor and assumed responsibility for paying the predecessor's debts).  While the parties are free to revisit this issue on summary judgment, at this juncture, the Motion must be denied.

### ii. *De Facto* Merger

Under the successor–in-interest theory of liability, Groover argues that PTS' acquisition of USC constitutes a *de facto* merger.  *Id*. at 8.  For a *de facto merger* to occur "one corporation [must be] absorbed by another, but without compliance with the statutory requirements for a merger."[1]  *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 153 (Fla. 4th DCA 1995).  In determining whether an asset sale constitutes a *de facto* merger, courts consider the following:

---

[1] Curiously, the Amended Complaint alleges that PTS "formally acquired" USC, suggesting that there was not a *de facto* merger but a formal corporate acquisition by one corporation of another.  ECF No. [36] at ¶16.

> (1) whether there is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets and general business operations; (2) whether there is a continuity of shareholders, accomplished by paying for the acquired corporation with shares of stock; (3) whether there is a dissolution of the seller corporation, and (4) whether the purchasing corporation assumes the obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations.

*Murphy*, 2016 WL 3017224 at *5.

Here, the Court finds that, within the four corners of the Amended Complaint, the documents referenced therein, and the supplemental documents, Groover failed to state a claim under a *de facto* merger theory. Specifically, the Court finds that there are no allegations demonstrating that USC has been dissolved. While Groover argues that USC was effectively dissolved in the transaction and was subsumed into PTS, there are no such allegations in the Amended Complaint nor can the Court draw any such inferences from the documents referenced in the Amended Complaint. Further, based on the Court's review of the newly submitted documents, there is nothing from which the Court can infer that USC has been dissolved. To the contrary, these newly filed documents indicate that PTS formally acquired all interest in USC, making USC a wholly owned subsidiary of PTS and thus negating the existence of a *de facto* merger. Looking at the four corners of the Amended Complaint, the documents referenced therein, and the supplemental documents, the Court finds that Plaintiff failed to state a claim for relief on a *de facto* merger theory of liability against PTS.

### iii. Mere Continuation

Groover's final theory of successor-in-interest liability against PTS is based on a mere continuation of a predecessor business theory. This theory applies "when the purchasing corporation is merely a continuation or reincarnation of the selling corporation" *Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1458 (11th Cir. 1985). To determine whether one

corporation is a continuation of another, "the test is whether there is a continuation of the corporate entity of the seller – not whether there is a continuation of the seller's business operations." *Id.* The key is whether there is "a common identity of the officers, directors, and stockholders in the selling and purchasing corporations" then, the successor corporation is considered a mere continuation of the predecessor corporation. *Id.* at 1459. *Murphy*, 2016 WL 3017224 at *4. Stated differently, a mere continuation occurs when "the purchasing corporation is merely a 'new hat; for the seller, with the same or similar management and ownership." *Bud Antle,* 758 F.2d at 1458.

Based on the four corners of the Amended Complaint, the documents referenced therein and the supplemental documents, the Court concludes that PTS had a corporate existence separate and apart from USC at the time of the acquisition and PTS is not, therefore, a mere continuation of USC. This is because the companies had completely different ownership and assets prior to the acquisition. The Decision of the Surface Transportation Board referenced in the Amended Complaint states that prior to the acquisition, PTS' ownership was as follows: Alan Sielbeck (38.5%), Kent Wood (31.5%), Robert Downs (24%), and Lisa Kyle (6%). ECF No. [71-1] at 2. By comparison, prior to the acquisition, USC's ownership was as follows: Steve Jacques (50%), Ashley Jacques (25%), and Dustin Baldwin (25%). *Id.* As a result of the acquisition, the members of USC transferred all right, title, and interest to all of their membership interests to PTS in exchange for certain interests in PTS. ECF No. [121-1]. Therefore the membership interest of PTS was altered to include: Alan Sielbeck (32.7%), Kent Wood (26.8%), Robert Downs (20.4%), and Lisa Kyle (5.1%), Steve Jacques (7.5%), Dustin Baldwin (3.75%), and Ashley Jacques (3.75%). ECF No. [71] at 2. The documents referenced in the Amended Complaint contradict any notion that PTS is a mere continuation of USC or that

USC is simply wearing the "new hat" of PTS. As a result, the Court finds that the Amended Complaint fails to state a plausible claim against PTS for successor liability under a mere continuation of USC theory.

### b. Count II

As to Count II, asserting a claim on behalf of the putative class, PTS argues that because Groover is not a member of the class of pretrial detainees injured by PTS' transportation customs, Groover lacks standing to bring a class action suit. *See* ECF No. [71] at 11. Count II defines the putative class as follows:

> All pretrial detainees and prisoners who were transported by Prisoner Transportation Services, LLC or any of its affiliates or subsidiaries, including U.S. Corrections, LLC, and forced to remain in a transport van in excess of twenty-four (24) continuous hours, subject only to brief, intermittent breaks, at any time between June through September of any year in the statutory period.

ECF No. [36] at ¶ 76. In response, Groover argues that because PTS is directly liable as USC's successor in interest, he is a member of the putative class and has standing to represent them. *See* ECF No. [77] at 12.

PTS' argument here is contingent upon a finding that PTS cannot be directly liable for Groover's claims in Count I. However, the Court has already determined that Plaintiff's claims against PTS in Count I remain viable. It, therefore, follows that PTS' argument as to Groover's standing in Count II fails. Given that Plaintiff has filed a Motion for Class Certification, the parties will have the opportunity to readdress Plaintiff's standing on behalf of the putative class at that time as the class definition has evolved since the filing of this Motion.

### c. Injunctive Relief

Finally, PTS seeks judgment on the pleadings on Plaintiff's claims for injunctive relief, arguing that Groover lacks standing to maintain such a claim and that it is moot. ECF No. [71].

More specifically, PTS states that Groover failed to allege a likelihood that USC or PTS will transport him in the future under the same conditions alleged in the Amended Complaint. *Id.* For that reason, PTS states he lacks standing to seek injunctive relief and, to the extent the transportation occurred in the past, PTS states the request for injunctive relief has become moot. *Id.* Groover, on the other hand, argues that an injunction is a remedy, not a claim; therefore, a court cannot render judgment on the pleadings on a remedy. *See* ECF No. [77] at 13-14. To the extent this is procedurally proper, Groover argues that he has alleged the necessary facts to demonstrate a threat of future injury in the Amended Complaint. *Id.* at 15.

It is well settled that "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (collecting cases). To do so, a plaintiff must claim a "personal stake in the outcome," meaning the plaintiff must demonstrate he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 101-102 (collecting cases).

While Groover is correct in stating that injunctive relief is a remedy and not a claim, he is incorrect in stating that a Court cannot grant judgment on the pleadings on a demand for injunctive relief. In support of his position, Groover cites to the dissenting opinion in *City of Los Angeles v. Lyons* in which Justice Marshall states it would be "anomalous to require a plaintiff to demonstrate 'standing' to seek each particular form of relief requested in the complaint when under Rule 54(c) the remedy to which a party may be entitled need not even be demanded in the complaint." 461 U.S. 95, 131 (1983) (Marshall, J. dissenting). However, the majority in *Lyons* reached the opposite conclusion. *Id.* at 110.

In *Lyons*, Adolph Lyons was pulled over by two officers for a traffic infraction. *Id.* at 97, 98. Lyons complied with the orders of the officers; however, within five to ten seconds, the officers began to choke Lyons by applying a forearm against his throat. *Id.* at 97-98. In Count V of his complaint, Lyons sought preliminary and permanent injunctive relief against the City of Los Angeles barring the use of chokeholds. *Id.* at 98. The district court granted a motion for partial judgment on the pleadings on Lyons' claim for injunctive relief, finding that he did not have standing to seek future relief against the use of chokeholds. *Id.* at 99. The Ninth Circuit Court of Appeals later reversed the decision, finding there was a sufficient likelihood that he would be stopped in the future and subject to such unlawful use of force so as to confer standing for injunctive relief. *Id.* On remand, the district court entered a preliminary injunction against the City of Los Angeles, which eventually made its way to the Supreme Court. *Id.* at 100. Because Lyons could not demonstrate a real and immediate threat that he would be choked in the future, the Court concluded that "the District Court was quite right in dismissing Count V [seeking injunctive relief]" on a partial judgment on the pleadings. *Id.* at 110. In the dissent, Justice Marshall argued that "[t]he federal practice has been to reserve consideration of the appropriate relief until after a determination of the merits, not to foreclose certain form of relief by a ruling on the pleadings" – an argument upon which Groover relies. *Id.* at 130. The majority opinion concluded otherwise and because the majority opinion in *Lyons* is binding authority, the Court concludes that it can determine whether Plaintiff has standing to assert a claim for injunctive relief on a motion for judgment on the pleadings.

Having resolved that issue, the Court concludes that Groover has not established standing to assert a claim for injunctive relief. Much like the respondent in *Lyons*, who did not establish a real and imminent threat of being illegally choked again, Groover failed to allege that he faces a

real and imminent threat of experiencing similar treatment or conditions when being transported from one prison to another in the future. Although Groover's Response argues that such allegations are present in the Amended Complaint, he does not cite to any such allegations and the Court sees none. As a result, the Court finds that Groover failed to demonstrate standing to seek injunctive relief against PTS.

Finally, with regard to PTS' argument that the claim for injunctive relief is moot, the Court agrees with PTS. "The mootness doctrine requires that the plaintiff's controversy remain live throughout the litigation; once the controversy ceases to exist, the court must dismiss the case for want of jurisdiction." *Tucker v. Phyfer.* 819 F.2d 1030, 1033 (11th Cir. 1987) (finding that the plaintiff's claim for declaratory and injunctive relief became moot by the time he moved for class certification and requested to be appointed as class representative, which required that the claims for equitable relief be dismissed for lack of jurisdiction). As there are no allegations of a threat of future harm and the events involving Groover occurred in the past, the Court concludes that his claim for injunctive relief has become moot. Given Groover's lack of standing to assert a claim for injunctive relief and the mootness of such a request, Plaintiff's claims for injunctive relief must be dismissed for lack of jurisdiction.


## IV.     CONCLUSION

For these reasons stated herein, Defendant Prisoner Transportation Services, LLC's Motion for Judgment on the Pleadings. **ECF No. [71]**, is **GRANTED in part** and **DENIED in part** consistent with this Order**.**

CASE No. 15-cv-61902-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of July, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

copies to: counsel of record