UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-61902 - BLOOM

JEFFREY EMIL GROOVER,
individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

U.S. CORRECTIONS, LLC;
PRISONER TRANSPORTATION
SERVICES, LLC; and JOHN DOES
1-100,

      Defendants.

_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
GRANTING IN PART DEFENDANT PRISONER TRANSPORTATION
SERVICES, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiff Emil Groover hereby moves for reconsideration of the Court July 30, 2018 order (ECF No. 156 (the "Order")) granting in part the motion for judgment on the pleadings (ECF No. 71) filed by Defendant Prisoner Transportation Services, LLC ("PTS").

## I.  INTRODUCTION

Reconsideration of the Order is necessary to correct two errors of law.  First, the Order erroneously holds that Plaintiff failed to demonstrate his Article III standing to seek injunctive relief.  In so holding, the Court overlooked the fact that Plaintiff was involuntarily incarcerated and thus faced imminent transport by Defendants and future risk of exposure to Defendants' unconstitutional policies <u>at the time his initial Complaint was filed</u>, which is the relevant point in time for purposes of assessing Article III standing under controlling Eleventh Circuit precedent.

Second, the Court erred by holding Plaintiff's request for injunctive relief moot.  Plaintiff and numerous putative class members remain incarcerated and thus every day face the real threat of being transported by Defendants under the same deplorable

conditions as experienced by Plaintiff in August 2015. The injunctive relief sought by Plaintiff would redress such future harm to himself and the proposed class members. The Eleventh Circuit has repeatedly held that a live controversy exists in these circumstances.

Reconsideration should be granted, and PTS's motion for judgment on the pleadings should be denied.

## II.   BACKGROUND

This action concerns systemic civil rights violations committed by the for-profit prisoner extradition companies PTS and U.S. Corrections, LLC ("USC"). In August 2015, Plaintiff was transported from North Carolina to Florida by USC in his capacity as a pretrial detainee, to stand trial in Fort Lauderdale, FL pursuant to a warrant issued by the Broward County Sheriff's Office ("BSO"). The BSO retained USC to transport Plaintiff to and from Fort Lauderdale, FL. Throughout the 52-hour trip to Fort Lauderdale, FL, Plaintiff was confined to a small steel cage (called the "dog cage" by Defendants) and forced to sit on a metal bench in a pitch black, windowless van. Plaintiff was intentionally deprived of adequate ventilation, water, and air conditioning, despite the excruciatingly hot condition inside the van (well in excess of 90 degrees), and, as a result, experienced physical, mental, and emotional exhaustion from the trip, as well as heat stroke, vomiting, extreme heat exposure, heat-induced delusions, and sleep deprivation. These conditions constituted cruel and unusual punishment in violation of Plaintiff's civil rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

On September 9, 2015, Plaintiff initiated this action with the Complaint, seeking injunctive and other monetary and non-monetary relief against USC and the BSO to redress these civil rights violations and prevent individuals from ever being subjected to the same conditions in the future. (ECF No. 1.) On October 2, 2017, Plaintiff filed the First Amended Complaint ("FAC") against USC and PTS, on behalf of himself and others similarly situated. (ECF No. 36.)

On April 18, 2018, PTS moved for judgment on the pleadings, arguing, *inter alia*, that Plaintiff had "fail[ed] to state claim for which relief can be granted." (ECF No. 71 at 6-7.) According to PTS, the pleadings "alleged no facts that show he faces a threat of future injury," and thus Plaintiff failed to allege "standing to maintain any claims for injunctive relief," rendering any such "claims for injunctive relief . . . moot." (*Id.* at 13-15.) In opposition, Plaintiff explained that because injunctive relief is a merely remedy, not a claim, it cannot be dismissed for "failure to state a claim." (ECF No. 77 at 13-14.) Plaintiff further explained that, regardless, he has indeed alleged facts supporting a threat of future injury – that he remains incarcerated and every day faces the risk of being transported again by Defendants under similarly deplorable conditions – and thus has alleged facts sufficient to support his standing to seek injunctive relief at the outset of the case and his ability to continue to seek such relief today. (*Id.* at 15; *see also, e.g.*, FAC at ¶ 5 ("Plaintiff is currently incarcerated. . ."); *id.* ¶ 8 ("Defendants' official policy . . ."); *id.* ¶ 9 ("Because Defendants' official policy . . .").)

On July 30, 2018, the Court issued the Order granting in part PTS's motion for judgment on the pleadings. The Court, while acknowledging that injunctive relief is a remedy, not a claim, reframed Defendant's bid for dismissal on "failure to state a claim" grounds as a challenge to the Court's subject-matter jurisdiction. (ECF No. 156 at 12.) Then, contrasting the majority and dissenting opinions from *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) – an appeal not from any judgment on the pleadings but rather from an order that actually entered a preliminary injunction – the Court reasoned that "[m]uch like the respondent in *Lyons*, . . . [Plaintiff here] failed to allege that he faces a real and imminent threat of experiencing similar treatment or conditions . . . in the future . . . As a result, the Court finds that [Plaintiff] failed to demonstrate standing to seek injunctive relief against PTS." (ECF No. 156 at 13-14.) Premised on that threshold finding – "no allegations of a threat of future harm" – the Court further held that "the events involving

[Plaintiff] occurred in the past," and that, as a result, "his claim for injunctive relief has become moot." (*Id.* at 14.)

Both of these holdings, as to standing and mootness, are contrary to controlling U.S. Supreme Court and Eleventh Circuit authority, warranting reconsideration pursuant to Rule 54(b).

### III. STANDARD OF REVIEW

Under Rule 54(b), trial courts have broad discretion to reconsider non-final orders to remedy clear error. *See Region 8 Forest Service Timber Purchasers Council, v. Alcock*, 993 F.2d 800, 805-806 (11th Cir. 1993); *Lussier v. Duggar*, 904 F.2d 661, 668 (11th Cir. 1990). Clear error occurs when a court "misapplies the law." *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services*, 225 F.3d 1208, 1218 (11th Cir. 2000). A court misapplies the law "when a relevant factor deserving a significant weight is overlooked . . . or when the court considers the appropriate mix of factors[] but commits palpable error of judgment in calibrating the decisional scales." *Cheney v. Cyberguard Corp.*, 2001 WL 1916564, at *1 (S.D. Fla. 2001) (reconsideration proper where court's holding "incorrectly interpreted the law").

### IV. ARGUMENT

Controlling Eleventh Circuit and U.S. Supreme Court authorities confirm that Plaintiff had Article III standing to seek injunctive relief against the Defendants at the outset of this litigation, and additionally confirm that Plaintiff's requests for injunctive relief have not been rendered moot at any time since. The Court committed clear legal error in holding otherwise.

Standing and mootness are related but separate issues. "The standing inquiry asks whether such a dispute exists at the beginning of the litigation, as compared to the mootness inquiry, which asks whether such a dispute remains throughout the litigation." *Dunn v. Dunn*, 148 F. Supp. 3d 1329, 1334 (M.D. Ala. 2015). Thus, once a party has established standing to invoke the jurisdiction of the court, the claim he asserts must

4

remain "live" throughout the pendency of the lawsuit – that is, it cannot become moot. *See Powell v. McCormack,* 395 U.S. 486, 496 (1969). Although the Supreme Court famously described mootness as "standing set in a time frame," it has emphasized that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000). "Therefore, the fact that a plaintiff would not now have standing to initiate a challenge to a given practice does not necessarily mean that a previously filed challenge has become moot." *Dunn*, 148 F. Supp. 3d at 1333.

In this case, Plaintiff had Article III standing to seek injunctive relief at the beginning of this litigation, and since that time nothing has changed (including and especially to the Defendants' policies, practices and customs) that would render his request for injunctive relief moot, either as to himself or the unnamed members of the proposed class. Reconsideration should be granted, and PTS's motion for judgment on the pleadings as to Plaintiff's requests for injunctive relief should be denied.

### A. Plaintiff Had Article III Standing to Seek Injunctive Relief at the Outset of the Litigation

At the core of Article III's standing doctrine is the requirement that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751 (1984), citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982).

Article III standing is assessed "at the outset of the litigation," *Focus on the Family v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1275 (11th Cir. 2003) (citation omitted); *Dunn*, 148 F. Supp. 3d at 1334 ("[A] case begins, for standing purposes, when the initial complaint is filed."), and need not be maintained throughout the case, *see Cleveland Branch, NAACP v. City of Parma,* 263 F.3d 513, 524 (6th Cir. 2001) ("[S]tanding does not

have to be maintained.... Instead, it is to be determined as of the time the complaint is filed."). Thus, Article III requires only that Plaintiff demonstrate his standing as of September 9, 2015, the date he filed the original Complaint. *See Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055, 1061 (5th Cir.1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction.").

Although Plaintiff filed the FAC against USC and PTS on October 2, 2017, Plaintiff's standing to seek injunctive relief is nonetheless considered as of the date he filed his original Complaint on September 9, 2015. Indeed, pursuant to Rule 15(c), the FAC relates back to the original Complaint for Article III standing purposes because the allegations he added to the FAC concern the same "conduct, transaction, or occurrence" as the allegations of the initial Complaint, Fed. R. Civ. P. 15(c)(1)(B), notwithstanding the FAC's addition of PTS as a defendant (whose liability arises from its assumption of USC's liabilities as its successor in interest). *See Dunn*, 148 F. Supp. 3d at 1334 ("Absent an amendment which effectively begins the case anew by adding in unrelated allegations (or new plaintiffs), standing once established need not be reconsidered."); *id.* at 1335 ("Because their allegations plainly relate back to their original complaint, they need show standing only as of the date it was filed.").

Plaintiff filed his initial Complaint on September 9, 2015, less than a month after USC had transported him from Butner, NC to Fort Lauderdale, FL in his capacity as a pretrial detainee. At the time of his transport in August 2015, Plaintiff was serving time as a result of a federal criminal conviction in Butner, NC, and was transported to Fort Lauderdale, FL by USC, a private prisoner extradition company under contract with the BSO, to stand trial on Florida state criminal charges. At the time Plaintiff initiated this action against USC in September 2015, Plaintiff was well aware that, at some imminently foreseeable time in the future, possibly again during the summer in conditions of extreme heat, he would need to be transported back to Butner, NC by the Broward County

Sheriff's Office, by way of its agent USC. And indeed, that is exactly what happened (albeit thankfully not during the summer): in November 2016, Plaintiff was transported back to Butner, NC by USC, at the direction of the Broward County Sheriff's Office. It is therefore beyond dispute that, at the outset of this case, Plaintiff had standing to seek injunctive relief to avoid future exposure to the harms he suffered en route from Butner to Fort Lauderdale, including such harms as "heat stroke [and] physical exhaustion." (Complaint, at 2.). These are the precise harms that Plaintiff sought injunctive relief in the FAC to prevent against in the future. (*See, e.g.,* FAC ¶ 9.).

In the Order, the Court found that Plaintiff, "like the respondent in *Lyons*, . . . failed to allege that he faces a real and imminent threat of experiencing similar treatment or conditions when being transported from one prison to another in the future." (ECF No. 156 at 13-14.) But that is incorrect. This case differs from *Lyons* at the exact point on which *Lyons* was decided. In *Lyons*, the constitutionally objectionable practice at issue <u>ceased altogether</u> before the plaintiff filed his complaint. In this case, Plaintiff specifically alleges that USC and PTS instituted systemic and <u>ongoing</u> policies that are violative of the Eighth and Fourteenth Amendments, and that Plaintiff and all members of the proposed class were involuntary members of a group of people exposed to that unconstitutional policy:

> Because Defendants' official policy, practice, or custom is to transport pretrial detainees and prisoners in conditions that amount to cruel and unusual punishment in violation of the U.S. Constitution, there is a likelihood of future injuries to pretrial detainees and prisoners including members of the proposed class. Accordingly, plaintiffs seek an order declaring unlawful Defendants' policy, practice or custom of transporting pretrial detainees under the conditions described above and enjoining Defendants from engaging in this conduct in the future.

7

(FAC ¶ 9.)[1]

The United States Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) conclusively demonstrates Plaintiff's standing to seek injunctive relief in this case.  In *County of Riverside*, a group of arrestee-plaintiffs alleged that the County of Riverside had violated the Fourth Amendment by failing to provide prompt judicial determinations of probable cause to persons arrested without a warrant. The Supreme Court concluded that the arrestee-plaintiffs had standing to seek injunctive and declaratory relief against the County of Riverside under § 1983, explaining:

> As an initial matter, the County renews its claim that plaintiffs lack standing. It explains that the main thrust of plaintiffs' suit is that they are entitled to "prompt" probable cause determinations and insists that this is, by definition, a time-limited violation. Once sufficient time has passed, the County argues, the constitutional violation is complete because a probable cause determination made after that point would no longer be "prompt." Thus, at least as to the named plaintiffs, there is no standing because it is too late for them to receive a prompt hearing and, under *Lyons,* they cannot show that they are likely to be subjected again to the unconstitutional conduct.

---

[1] *Lyons* is inapposite in other respects, too.  It was an appeal from an order entering a preliminary injunction, *i.e.*, an order actually granting relief, not on the pleadings.  As such, it did not (indeed could not) hold anything as to the sufficiency of pleadings.  Moreover, its passing commentary that "the district court was right to dismiss" was at most nonbinding dicta.  *See Edwards v. Prime, Inc.*, 602 F.3d 1276, (11th Cir. 2010) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision . . . All statements that go beyond the facts of the case . . . are dicta . . . And dicta is not binding on anyone for any purpose.").  The Court's Order's mistook that dicta as "binding authority," and compounded the error by applying that inapposite dicta out of its context (an order granting actual relief) to the distinguishable facts and context at issue in this case (in an order on whether the pleadings raise a plausible inference of potential entitlement to relief).  Finally, Justice Marshall's classic statement of black-letter law is neither contrary to the majority opinion (which instead address actual relief, not mere pleading), nor in any way diminished simply because it appeared in dissent; Courts in this Circuit and nationwide continue to quote and rely on Justice Marshall's seminal statement of this basic legal principle.  *See, e.g., Schmidt v. C.R. Bard, Inc.*, 2014 WL 5149175, at *8 (S.D. Ga. 2014) ("Whether a claim for relief should be dismissed under Rule 12(b)(6) 'turns not on 'whether [a plaintiff] has asked for the proper remedy but whether he is entitled to *any* remedy.'") (quoting Justice Marshall's dissent in *Lyons*); *Burkina Wear, Inc. v. Campagnolo, S.R.L.*, 2008 WL 1007634, at *3 (S.D.N.Y. 2008) (same); *Oppenheimer v. Southwest Airlines Co.*, 2013 WL 3149483, at *3 (S.D. Cal. 2013) (same); *Miller v. Elliott Aviation Aircraft Sales Inc.*, 2014 WL 12601040, at *9 (S.D. Iowa 2014) (same).

> We reject the County's argument. . . . The County does not dispute that, at the time the second amended complaint was filed, plaintiffs James, Simon, and Hyde had been arrested without warrants and were being held in custody without having received a probable cause determination, prompt or otherwise. Plaintiffs alleged in their complaint that they were suffering a direct and current injury as a result of this detention, and would continue to suffer that injury until they received the probable cause determination to which they were entitled. <u>Plainly, plaintiffs' injury was at that moment capable of being redressed through injunctive relief.</u> The County's argument that the constitutional violation had already been "completed" relies on a crabbed reading of the complaint. <u>This case is easily distinguished from *Lyons,* in which the constitutionally objectionable practice ceased altogether before the plaintiff filed his complaint</u>.

*Cty. of Riverside*, 500 U.S. at 50-52 (emphasis added).

The systematic nature of the policy in question in this case, and the fact that Plaintiff had already been involuntarily exposed to it in violation of his constitutional rights, further confirms that Plaintiff had standing to seek injunctive relief at the moment he filed the Complaint. In *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), the Eleventh Circuit's seminal decision interpreting *Lyons*, the plaintiffs were a putative class of "homeless residents of Huntsville, Alabama," seeking injunctive relief prohibiting Huntsville from "implementing a policy" of "detaining or arresting members of the defined class . . . because of their status as homeless persons[.]" *Church*, 30 F.2d at 1335; *see also* ECF No. 71 (citing *Church*). Over the defendant's objections that *Lyons* controlled, the Eleventh Circuit found he plaintiffs had standing to pursue injunctive relief because (unlike in *Lyons*): (1) the challenged actions were allegedly the result of an official policy (not a random act); and (2) the plaintiffs were involuntary members of a specific group potentially subject to that policy (not simply members of the general public). *See id.* at 1338 (noting that plaintiffs "are homeless involuntarily," and concluding that "[b]ecause of the allegedly involuntary nature of their condition, the plaintiffs cannot

9

avoid future 'exposure to the challenged course of conduct' in which the City allegedly engages"); *see also id.* ("[T]he plaintiffs allege that municipal policy authorizes the constitutional deprivations that they claim to have suffered at the hands of City officials[.] This case is therefore distinguishable from *Lyons,* where the alleged policy did not necessarily authorize the constitutional deprivation Lyons suffered. If true, the plaintiffs' allegations in this case would establish a substantial likelihood that, absent an injunction, the City will continue to act in a similar manner toward them in the future. Therefore, the plaintiffs have standing to seek the injunctive relief").

The Eleventh Circuit reiterated the importance of these factual circumstances to the standing inquiry in *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003), a case brought on behalf of a state-wide class of children in the Florida foster-care system for injunctive relief to redress unconstitutional policies. *31 Foster Children*, 329 F.3d at 1261. Again rejecting the defendant's arguments that *Lyons* controlled, the Eleventh Circuit held the plaintiff foster children had standing to seek injunctive relief because they were involuntary members of a specific group at increased risk of exposure to the challenged policies. *See id.* at 1266 (plaintiffs had standing to seek injunctive relief because they were "in the custody of the defendants involuntarily and will be until they are returned to their parents, are adopted, or reach the age of majority. They cannot avoid exposure to the defendants' challenged conduct"); *id.* ("The alleged systemic deficiencies in the Florida foster care system are similar to an injurious policy, and different from the random act at issue in *Lyons*. The alleged pattern and practice in this case presents a substantial likelihood that the alleged injury will occur.").

The decisions in *County of Riverside, Church*, and *31 Foster Children* control here. Just like the defendant's policy in *County of Riverside*, USC's policy of transporting detainees in violation of the Eighth and Fourteenth Amendments continued unabated at the moment Plaintiff filed suit (and shamefully continues to this day by both USC and its successor in interest PTS). And just like the homeless in *Church* and the foster

children in *31 Foster Children*, Plaintiff remains an involuntary member of a specific group at increased risk of exposure to the systemic unconstitutional policies challenged in this case. *See, e.g.*, ECF No. 36 at ¶ 5 ("Plaintiff is currently incarcerated. . ."); ¶ 8 ("Defendants' official policy . . ."); ¶ 9 ("Because Defendants' official policy . . ."). Because "the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again." *31 Foster Children,* 329 F.3d at 1266; *see also J.W. v. Birmingham Board of Education*, 143 F. Supp. 3d 1118, 1165 (N.D. Ala. 2015) (holding plaintiff public high school student had standing to seek injunctive relief from school's alleged policy because "[l]ike the homeless in *Church* and the foster children in *31 Foster Children*, [plaintiff] is an involuntary member of a specific group that is at an increased risk of exposure to the challenged behavior," which behavior is "the product of an injurious policy," and thus "different from the random act at issue in *Lyons*.").

The Court's dismissal of Plaintiff's requests for injunctive relief against PTS for lack of Article III standing constituted clear legal error. Reconsideration should be granted, and PTS's motion for judgment on the pleadings as to Plaintiff's requests for injunctive relief should be denied.

### B. Plaintiff's Requests for Injunctive Relief Have Not Been Mooted

In the Order, the Court further held that Plaintiff's requests for injunctive relief are moot because Plaintiff had already been transported by USC. (ECF No. 156 at 14.) This too was clear legal error. Plaintiff's request for injunctive relief is not moot as to his individual claim, but even if it were, it is not moot as to the claims of the unnamed class members.

A request for "injunctive relief" is moot only if: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Reich v. Occupational Safety and Health Review Com'n*, 102 F.3d 1200, 1201

(11th Cir. 1997) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625 (1979)). Neither requirement is satisfied here.

As explained above, Plaintiff faces a real, ongoing risk that alleged violations will recur: He remains incarcerated and subject to future transport by Defendants under the same deplorable conditions and policies as he was transported in August 2015. Indeed, various contractual documents entered into between the BSO and USC and PTS (attached hereto as Exhibits "A" through "F"), which Plaintiff recently obtained[2] from the BSO via third-party subpoena, confirm that both USC and PTS remain under contract with the BSO to this day, and that they are the exclusive transporters of prisoners and pretrial detainees on behalf of the BSO.[3] It thus certainly cannot "be said with assurance that there is no reasonable expectation that the alleged violation will recur" with respect to Plaintiff in this case. *See Reich*, 102 F.3d at 1201. Nor have any interim events completely and irrevocably eradicated the effects of the alleged violations; rather, as alleged in the FAC, Defendants' unconstitutional policies and practices remain in place exactly as before, have not been remedied, and thus continue to pose the very same risks to Plaintiff going forward. Plaintiff requests injunctive relief to redress these ongoing constitutional violations, which are a product of Defendants' uniform policies and practices. Under the circumstances, Plaintiff's request for injunctive relief on his own behalf is plainly not moot.[4] *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007).

---

[2] These contractual documents were not produced to Plaintiff by either USC or PTS, even though they are plainly responsive to Plaintiff's requests for production served in this case. Rather, the contracts were first produced to Plaintiff by the BSO on July 9, 2018, months after the filing of Plaintiff's response in opposition to PTS's motion for judgment on the pleadings.

[3] The Court should take judicial notice of the contracts, which are public records, pursuant to Federal Rule of Evidence 201. *See Gastaldi v. Sunbest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1054 (S.D. Fla. 2009) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999)); *see also, e.g., Roberto v. Shendell & Assocs., P.A.*, No. 9:17-CV-81213, 2018 WL 1367445, at *1-2 (S.D. Fla. Mar. 16, 2018).

[4] Even if Defendants had carried their burden to establish the complete abandonment of their unconstitutional policies and practices (they certainly have not), Plaintiff's requests for injunctive relief would still not be moot. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts

Even if Plaintiff's request for injunctive relief as to his individual claim was moot (and it is not), there is a "well-recognized exception to mootness where the class members consist of pretrial detainees." *Hunter v. Beshear*, 2018 WL 564856, at n.1 (M.D. Ala. 2018) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975)). "[P]retrial detention is by nature temporary" – yet "it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures." *Id.* "Under these circumstances, the 'capable of repetition, yet evading review' exception to mootness applie[s]," because while "any given pretrial detainee['s] [claim may not remain ripe] long enough for a district judge to certify the class," "the 'constant existence' of class members suffering the deprivation is certain." *Id.; see also Cty. Of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991) (finding claims of pretrial detainees not moot even though named plaintiffs' claims had been rendered moot prior to class certification). Thus, "[e]ven if [Plaintiff's] individual claims are somehow deemed moot, the class claims remain live, and [Plaintiff] retain[s] the ability to pursue them." *Stein v. Buccaneers Ltd. Partnership*, 772 F.3d 698, 704-708 (11th Cir. 2014). As the Supreme Court and Eleventh Circuit have reiterated, "the necessary personal stake in a live class-action controversy [] is present even when the named plaintiff's own individual claim has become moot." *Id.* (collecting cases). In this case, Plaintiff has diligently pursued class certification, his motion to certify is fully briefed, and his request for injunctive relief on behalf of the proposed class is therefore unquestionably live.

The Court's dismissal of Plaintiff's requests for injunctive relief against PTS on mootness grounds constituted clear legal error. Reconsideration should be granted, and PTS's motion for judgment on the pleadings as to Plaintiff's requests for injunctive relief should be denied.

---

would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

## V. CONCLUSION

For the foregoing reasons, reconsideration should be granted and PTS's motion for judgment on the pleadings as to Plaintiff's requests for injunctive relief should be denied.

Dated:  August 14, 2018

Respectfully submitted,

Hedin Hall llp

By: s/ Frank S. Hedin            .
FRANK S. HEDIN (SBN 109698)
DAVID W. HALL (*pro hac vice*)
fhedin@hedinhall.com
dhall@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2018, a true and correct copy of the foregoing was served via the Court's CM/ECF filing system on counsel of record in this action.

/s/ Frank S. Hedin
FRANK S. HEDIN