## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 15-cv-61902-BLOOM/Valle

JEFFREY EMIL GROOVER,

      Plaintiff,

v.

PRISONER TRANSPORTATION SERVICES, LLC
and U.S. CORRECTIONS, LLC.

      Defendants.

_____/

### ORDER ON MOTION FOR CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Class Certification, ECF No. [108] (the "Motion"). The Court has carefully considered the Motion, all supporting and opposing filings, the arguments of counsel, the relevant authority, and is otherwise duly advised. For the reasons that follow, the Motion is denied.

### I.    BACKGROUND

Plaintiff, Jeffrey Emil Groover ("Groover" or "Plaintiff"), filed this action, individually and on behalf of all others similarly situated, against Prisoner Transportation Services, LLC ("PTS"), U.S. Corrections LLC ("USC"), and John Does 1-100 alleging civil rights violations pursuant to 42 U.S.C. § 1983. ECF No. [36]. In the Amended Complaint, Groover, an inmate at the Butner Low Security Federal Correctional Institution in Butner, North Carolina, alleges that between August 14, 2015, and August 16, 2015, USC transported him from Butner, North Carolina to Fort Lauderdale, Florida (the "August 2015 Transport") in a windowless transport van lacking sufficient ventilation and air conditioning. *Id*. at. ¶ 6. Groover claims that he was deprived of sleep, water, and refuge from the heat. *Id*. As a result of the purported excessively

hot conditions and lack of adequate ventilation in the van, Groover experienced physical, mental, and emotional exhaustion as well as a heat stroke. *Id.* According to the Amended Complaint, USC knew of the conditions to which Groover was subjected and failed to take appropriate measures. *Id.* at ¶ 30. Groover states that numerous other pretrial detainees transported by USC and PTS suffered similar inhumane conditions and harm as a result of their transportation practices. *Id.* at. ¶ 28. Groover alleges that these conditions violate his and other pretrial detainees' Eighth and Fourteenth Amendment rights. *Id.* at ¶ 8.

In Count I, Groover, individually, asserts a claim for a violation of his Eighth and Fourteenth Amendment rights against Defendants pursuant to 42 U.S.C § 1983. *Id.* at 24. In Count II, Groover asserts the same claim against Defendants on behalf of the putative class members. *Id.* at 26. Groover seeks an award of damages and injunctive relief. *Id.* at "PRAYER FOR RELIEF."

Plaintiff now asks the Court to certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). *See* ECF No. [108]. In response, Defendants argue that Plaintiff has failed to demonstrate that class certification is proper. *See* ECF Nos. [130], [131]. Plaintiff's reply followed. *See* ECF No. [142]. USC requested, and was granted, leave to file a sur-reply to address discrepancies between Plaintiff's class definition as set forth in the Amended Complaint, the Motion, and the Reply, which USC thereafter filed. *See* ECF No. [152]. On August 21, 2018, the Court held a hearing on Plaintiff's Motion for Class Certification. *See* ECF No. [176]. On August 30, 2018, Plaintiff submitted a supplemental report regarding the proposed class's numerosity and ascertainability, in light of discovery produced by USC on August 23, 2018. *See* ECF No. [186].

## II.   LEGAL STANDARD

District courts have broad discretion in deciding whether to certify a class.  *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992).  To certify a class action, the named plaintiffs must have standing, and the putative classes must "satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)."  *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Little v. T–Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012)); *see Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b).").  "Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation."  *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1265 (11th Cir. 2009) (citing Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187–88 (11th Cir. 2003)).  Here, Plaintiff seeks certification pursuant to Rule 23(b)(2) and 23(b)(3), seeking both equitable and monetary relief.  Certification is appropriate under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  On the other hand, Rule 23(b)(3) requires a plaintiff to prove that "[c]ommon questions [ ] predominate over any questions affecting only individual members; and class

3

resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windson*, 521 U.S. 591, 615 (1997) (citation omitted).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *see also Rutstein,* 211 F.3d at 1233. The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis added). "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega,* 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)).

## III.   DISCUSSION

### A.  Individual Standing

#### i.  Article III Standing

"It is well-settled in the Eleventh Circuit that prior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 679 (S.D. Fla. 2004) (citing *Wolf Prado–Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000)); *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing.")). Indeed, "[o]nly after the court determines the issues for which the named plaintiffs have standing

should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin,* 823 F.2d at 1482. "To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris,* 331 F.3d 817, 819–20 (11th Cir. 2003).

The Court must separately assess whether Groover has standing to seek equitable relief and monetary relief. Groover's standing to seek the injunction and declaration requested depends on whether he is likely to suffer future injury from the allegedly unconstitutional policies and practices employed by USC in its transport of prisoners. Groover does not have standing to seek equitable relief if USC does not currently have a policy or practice of transporting individuals under the allegedly unconstitutional conditions.

According to the Declaration of Steven Jacques ("Jacques"), a former USC shareholder and the current Chief Transition Officer for PTS, USC was acquired by PTS in January of 2017. ECF No. [130-2] at 2-4, 6. Since the date of the acquisition,

> PTS has made numerous changes to USC's policies, systems and equipment including but not limited [to], the discontinuation and replacement of USC's vehicles, equipment, electronic systems, databases, procedures and policies including but not limited to USC's Prisoner Transportation Manual.

*Id.* at 6.

The evidence Plaintiff has presented concerning the conditions prisoners are exposed to during transport is indicative of USC's practices prior to the acquisition in 2017. Groover takes issue with the policy, or lack thereof, in the Prisoner Transportation Manual concerning how frequently prisoners were provided water, the conditions under which a van could stop to allow

prisoners a break from the heat, and the inadequate ventilation systems in USC's vans. Specifically, and as discussed more fully below, Plaintiff has presented evidence of USC's policies and practices on these issues by way of (1) Groover's deposition; (2) the deposition of John Stirling, a former employee of USC who transported Groover in August 2015; and (3) USC's Prisoner Transportation Manual.  First, the portions of Groover's deposition that serve to evince USC's policies and practices are related primarily to his August 2015 Transport by USC and secondarily to a second transport by USC in November 2016.  Second, John Stirling testified about his experience as a driver for USC during his employment from Spring of 2015 until the Fall of 2016.  *See* ECF No. [110-1] at 16:21-17:6.  Third, although USC's Prisoner Transportation Manual is not dated, Stirling's testimony establishes that the document pre-dates his employment with USC in 2015-2016.  *See id.* at 73:5-25 (USC provided Stirling the Prisoner Transportation Manual during one-week training immediately prior to starting his employment).

In light of Jacques's unrebutted testimony that USC's vehicles and the Prisoner Transportation Manual have been discontinued or replaced, the evidence Groover has presented of USC's policies and procedures predating the acquisition fail to reflect the current conditions of transport.  Accordingly, Groover has not shown that he faces a real and immediate threat of being exposed again to the allegedly unconstitutional conditions.  Although Groover has a live claim for monetary damages, the Court is required to dismiss the claim for injunctive and declaratory relief for lack of standing.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again…"); *see also Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987) (dismissing

for lack of standing claim for injunctive and declaratory relief, live claim for money damages notwithstanding).

As to Plaintiff's claim for damages, Plaintiff has allegedly suffered physical, mental, and emotional injuries as a result of the August 2015 Transport.  Thus, the Court finds that Plaintiff has Article III standing to seek monetary damages.[1]

### ii.  Class Standing

Defendants challenge Groover's individual standing, arguing that Groover is not a member of the proposed class because he was not a pretrial detainee at the time of the transport. USC contends that a pretrial detainee is an individual that "is presumed to be innocent and held *only* to ensure their presence at trial."  ECF No. [130] at 6.  Defendants argue that since Groover was already a convicted prisoner at the time of the August 2015 Transport, he falls outside of that definition.  *Id.*

Groover counters that although he was a convicted prisoner at the time, he was transported in his capacity as a pretrial detainee.  Groover analogizes his status to a line of cases finding that convicted prisoners on parole or probation qualify as pretrial detainees while in custody awaiting trial or en route to trial on new charges unrelated to their prior conviction or incarceration.  *See, e.g.*, *Dannebaum v. County of San Diego*, 2016 WL 2931114, at *3 (S.D. Cal. 2016); *Turner v. White*, 443 F. Supp. 2d 288, 294 (E.D. N.Y. 2005); *Towsley v. Frank*, 2010 WL 5394837, *5-*6 (D. Vt. 2010).  In *Dannebaum*, for example, the plaintiff was being held at a

---

[1] PTS argues that Plaintiff lacks Article III standing to assert claims against PTS for alleged violations that occurred while Plaintiff was being transported by USC before USC was acquired by PTS in November 2017.  *See generally* ECF No. [131].  In the Order on Motion for Judgment on the Pleadings, this Court held that Plaintiff had sufficiently alleged that, through its acquisition of USC, PTS had assumed the liabilities of USC.  *See* ECF No. [156] at 6-8.  For the same reasons, Plaintiff has standing to assert his claim for monetary damages against PTS.  However, the Court notes, as it did in the Order on Motion for Judgment on the Pleadings, that the parties are free to revisit this issue on summary judgment.

detention facility awaiting trial on a felony complaint, while on parole for a prior conviction. 2016 WL 2931114, at *1.  An altercation occurred at the detention facility, as a result of which, plaintiff brought 1983 claims for excessive force and cruel and unusual punishment.  *Id.*  In determining whether plaintiff was entitled to Eighth Amendment or Fourteenth Amendment protection, the court reasoned:

> where the parolee's incarceration is based on new charges that are unrelated to his prior conviction or a violation of his parole terms, he's entitled to the Fourteenth Amendment's more protective standard.  [Plaintiff]'s incarceration had less to do with his prior conviction or his status as a parolee, and more to do with the new separate crime for which he was being held.  Because he was detained for a crime for which he hadn't been convicted, the Court concludes that he retains his rights under the Fourteenth Amendment's Substantive Due Process Clause.

*Id.* at *3.

The Court finds the reasoning persuasive in *Dannebaum* and the other cases cited in the parole and probation context. This reasoning applies to an inmate being transported to face a charge for which he has not yet been convicted, such as Groover was in August 2015.  Thus, Groover's prior conviction did not deprive him of his constitutional right to Fourteenth Amendment protection as a pretrial detainee during the August 2015 Transport.

Defendants also argue that Groover lacks class standing to the extent that he is barred from bringing his claim or seeking monetary damages pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e.  Defendants contend that because Groover is currently incarcerated and was a prisoner of the federal government at all relevant times he is not entitled to damages for physical pain and emotional distress, and Groover has not satisfied the PLRA's exhaustion requirement since he never filed a grievance with respect to his August 2015 Transport.

First, as to Defendants' argument that Groover is barred from seeking monetary damages, § 1997e provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical injury or the commission of a sexual act."   In considering whether a plaintiff was entitled to monetary damages for mental or emotional injury in a case also against PTS, the Eleventh Circuit stated:

> Under section 1997e(e), a plaintiff may not recover monetary damages (compensatory or punitive) for mental or emotional injury unless he also alleges that he suffered more than *de minimis* physical injury. *Smith v. Allen,* 502 F.3d 1255, 1271 (11th Cir.2007). Though section 1997e(e) does not define physical injury, we have concluded that, to satisfy the statute "the physical injury must be more than *de minimis,* but need not be significant." *Harris v. Garner,* 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated, in part, on other grounds,* 216 F.3d 970 (11th Cir.2000) (*en banc* ) (concluding that a "dry shave" was not the kind of physical injury cognizable under section 1997e(e)); *see also Nolin v. Isbell,* 207 F.3d 1253, 1258 n. 4 (11th Cir.2000) (bruises received during an arrest were non-actionable *de minimis* injury).

*Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 (11th Cir. 2009).   In that case, the Eleventh Circuit held that the district court did not err in concluding that plaintiff's claims for compensatory and punitive damages did not surmount section 1997e's bar where plaintiff complained of temporary chest pain, headache, and difficulty breathing while in the van, and had periodic episodes of back pain.  *Id.*  Here, Groover alleges that he suffered "heat stroke, extreme heat exposure and sleep deprivation."  Compl. ¶ 6.   Because Groover has alleged more than *de minimis* physical injury, the Court finds that at this stage Groover has standing to pursue a claim for monetary relief for mental or emotional injury.

Second, administrative exhaustion is not required "when no pertinent relief can be obtained through the internal process."  *Brown v. Valoff,* 422 F.3d 926, 935 (9th Cir. 2005); *see also Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) ("A remedy has to be available before it must be exhausted").   Because the failure to exhaust is an affirmative defense, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015).  Here,

Defendants have entirely failed to show that an administrative remedy was available to Plaintiff. Groover's individual standing requirement is, therefore, satisfied.

### B.  Adequately Defined and Clearly Ascertainable

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679, 684 (S.D. Fla. 2014) (quoting *Little,* 691 F.3d at 1304 (citing *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970))).  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 F. App'x. 782, 787 (11th Cir. 2014) (citing *Fogarazzo v. Lehman Bros., Inc.,* 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).  These "objective criteria" should be "administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiries." *Id.* (citation omitted) (reversing district court decision finding ascertainability satisfied where class could be identified by reference to the defendant's records).  If a plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is properly denied. *See Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification because class was not adequately defined or clearly ascertainable); *Perez v. Metabolife Int'l, Inc.,* 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult.").

### i. Adequately Defined

Before determining the ascertainability of the class, the Court must first ensure the class is adequately defined. The Court notes that Plaintiff's proposed class definition has taken different forms throughout the progression of this litigation. Originally, in the Complaint and the Amended Complaint, Plaintiff defined the proposed class as "[a]ll pretrial detainees and prisoners who were transported by Prisoner Transportation Services, LLC or any of its affiliates or subsidiaries, including U.S. Corrections, LLC, and forced to remain in a transport van in excess of twenty-four (24) continuous hours, subject only to brief, intermittent breaks, at any time between June through September of any year in the statutory period." ECF No. [36] at ¶ 76. Thereafter, in Plaintiff's Motion for Class Certification, Plaintiff modified the class definition as follows:

> All persons in the United States who, between October 12, 2012 and the date of the Court's order granting class certification, were transported as a pretrial detainee by Prisoner Transportation Services, LLC or any of its affiliates or subsidiaries, including U.S. Corrections, LLC, in a "dogcage"- equipped van for twenty-four (24) or more hours, through at least one location with an outdoor temperature of at least 80 degrees Fahrenheit, as measured by a judicially-noticeable source.

ECF No. [108] at 1.

In Plaintiff's Reply in Support of Motion for Class Certification, the proposed class was again narrowed to reinsert the limitation that the transport must have occurred "at any time during the months of June through September." ECF No. [142] at 2.[2]

_____

[2] At the hearing on Plaintiff's Motion for Class Certification, Plaintiff's counsel indicated that Plaintiff would like to define the class to include only individuals with a "warrant" classifier as the "transport type" on their "face sheet" that had been produced by USC after the filing of the Motion for Class Certification. ECF No. [176] at 22. For example, see Groover's "face sheet." ECF No. [186-4] at 1. Additionally, at the hearing the parties agreed that Weather Underground is a judicially noticeable source for historical weather data. ECF No. [176] at 6:13-14, 40:2-5, 62:18-20.

It is well within the Court's authority to redefine Plaintiff's proposed class. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1759 at 130–31 (3d ed. 2005) ("[I]f plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23."); *see also* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 8:12, at 200 (4th ed. 2002) ("When a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal.").  The Court exercises its discretion to redefine the proposed class as follows:

> All persons in the United States who, between October 12, 2012 and the date Prisoner Transportation Services acquired U.C. Corrections LLC, were transported as a pretrial detainee by U.S. Corrections, LLC, as indicated by a designation of "warrant" as the "transport type" on the "face sheet," in a prisoner cage equipped van for twenty-four (24) or more hours, at any time during the months of June through September, through at least one location with an outdoor temperature of at least 80 degrees Fahrenheit, as measured by weatherunderground.com.

### ii.  Ascertainability

Plaintiff has not shown that the proposed class is clearly ascertainable.  Plaintiff has failed to demonstrate that class members can be ascertained by reference to objective criteria, and how Plaintiff can reliably identify class members using Defendants' records.  An individual is a member of the proposed class if he or she was (1) transported as a pretrial detainee; (2) in a prisoner cage equipped van; (3) for twenty-four or more hours between June and September; (4) through at least one location with an outdoor temperature of at least 80 degrees Fahrenheit. Plaintiff carries the burden of establishing the existence of an administratively feasible method of identifying individuals that meet those criteria.  *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015).   The Court finds that Plaintiff has established that he can identify

individuals who meet requirements (1), (3), and (4), but has failed to satisfy his burden with respect to requirement (2).

First, the Court finds that an individual was transported in his or her capacity as a pretrial detainee if the passenger's "face sheet" designates the "transport type" as "warrant."  At the Hearing on Plaintiff's Motion for Class Certification, USC's counsel acknowledged that a "transport type" as "warrant" indicates that an individual was transported as a result of a warrant to face charges.  *See* ECF No. [176] at 81:22-82:17.  Since the Court has already concluded that a prisoner transported to face a charge for which he or she has not yet been convicted is transported in his or her capacity as a pretrial detainee, it necessarily follows that a designation of "warrant" indicates transport as pretrial detainee.  Accordingly, Plaintiff has demonstrated that whether an individual was transported as a pretrial detainee can be determined using Defendants' records.

Second, the Court finds that Plaintiff has not demonstrated that he will be able to identify whether an individual was transported in a van equipped with a prisoner cage.  In his Supplemental Report Regarding the Proposed Class's Numerosity and Ascertainability, Plaintiff argues that "Defendants own the vans, coordinate the installation and removal of the prisoner cages from the vans, and thus have receipts reflecting all maintenance work performed on the vans…"  *See* ECF No. [186-1] at 6.  Plaintiff attaches to the Supplemental Report a sample receipt reflecting work performed on a van to remove a cage.  ECF No. [186-11].  Plaintiff also states that he has subpoenaed a vendor of USC for records of sales or prisoner cages to Defendants or maintenance work performed on Defendants' prisoner cages.  *Id.*

The Court is not convinced that Plaintiff has offered an adequate method of identifying which individuals were transported in vans equipped with prisoner cages.  The sample invoice

attached to the Supplemental Report does not identify the van on which the work was performed. Moreover, even if the receipts identified the particular van that had been serviced, one would only be able to conclude that the van was equipped with a prisoner cage for some undetermined amount of time prior to the removal. Equally important, Plaintiff has not established that he will be able to locate an invoice for each instance in which a prisoner cage was removed from a USC van. The invoices for removal of cages are only of limited use without documentation identifying the vans that initially had cages installed. Thus, the absence of an invoice for cage removal is meaningless unless Plaintiff can prove that van was equipped with a prisoner cage at some point in time. Plaintiff has not shown that he will be able to do so. As to the vendor's records, Plaintiff did not proffer any such records, nor did Plaintiff provide evidence that the records would determine which vans had cages at what time. *See Wasser v. All Mkt., Inc.*, No. 16-cv-21238, 2018 WL 5629906, at *8 (S.D. Fla. Sept. 26, 2018) (finding that the Eleventh Circuit's instruction "that plaintiffs 'cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records,'" applies equally to third party records, (quoting *Karhu*, 621 F. App'x at 947)).[3] Plaintiff has failed to meet his burden to demonstrate that he will be able to identify which prisoners were transported in vans equipped with prisoner cages because Plaintiff has not established that he will be able to determine whether vans had prisoner cages during particular transports.

Third, Defendants are able to produce lists of individuals transported for over 24 hours between June and September. Defendants have already produced a list of 1,376 pretrial

---

[3] Plaintiff also notes that, at the class certification hearing, Plaintiff's counsel informed the Court that USC would eventually need to produce the documents identifying which vans had prisoner cages. ECF No. [186-1] at 6 n.7. However, to date the Court has not been advised that said records have been produced, and Plaintiff has not sought a stay of consideration of its Motion for Class Certification pending production.

detainees or prisoners transported by USC for 24 or more hours between the months of June through September in years 2014, 2015, and 2016.  *See* ECF No. [186-2].

Fourth, whether an individual was transported through at least one location with an outdoor temperature of at least 80 degrees Fahrenheit can be determined based on the "run note" records, the GPS transport records, and Weather Underground's historically-recorded temperature records.  *See* ECF No. [181-1] at 7-15.

The Court concludes that the proposed class is not clearly ascertainable.  At this juncture, Plaintiff has failed to set forth an administratively feasible method of determining class membership because Plaintiff has failed to show that he will be able to identify the individuals who were transported on vans equipped with prisoner cages.  Although unnecessary, for the purposes of thoroughness, the Court examines the remainder of the Rule 23 elements, including those issues presented under 23(a) and 23(b).

**C.  Rule 23(a) Factors**

Under Rule 23(a), Plaintiff is required to demonstrate each of the four factors: numerosity, commonality, typicality and adequacy.  The Court is required to conduct a rigorous analysis of all four factors when deciding matters of class certification, so it will go through each factor to determine whether Plaintiff has satisfied his burden.  As an initial matter, "Rule 23(a) must be read liberally in the context of civil rights suits."  *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975).

**i.  Numerosity**

Under the first prong of the Rule 23(a) analysis, a plaintiff must demonstrate that the class is "so numerous that joinder of all members is impracticable."  *Ruderman v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) (quoting Fed. R. Civ. P. 23(a)(1)).  "The

focus of the numerosity inquiry is not whether the number of the proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Id.* at 679 (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)).   Generally speaking, the Eleventh Circuit has concluded that less than twenty-one class members is inadequate to satisfy the numerosity requirement but more than forty is adequate. *Id.* (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).

Of the list of 1,376 individuals transported by USC for 24 or more hours between June and September of years 2014, 2015, and 2016, USC produced the "face sheets" of the first 500 individuals on the list.   Of those 500 individuals, 326 were transported in their capacity as pretrial detainees.   According to the testimony of John Stirling, approximately half of the vans USC used to transport individuals are equipped with prisoner cages.   ECF No. [110-1] at 44:11-12.   Based on Stirling's approximation, roughly 163 of the first 500 individuals on the list were transported by USC for more than 24 hours between June and September as pretrial detainees in a prisoner cage.   It appears likely that many of these individuals will meet the temperature requirement of passing through one location with an outdoor temperature of at least 80 degrees, since they were transported during the summer months of June through September.   Since the proposed class also consists of individuals transported during the years 2012 and 2013, and taking into account that the numerosity requirement must be read liberally in the context of civil rights suits, the first factor is satisfied.

### ii.  Commonality

The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001))

("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof."). In *Wal–Mart*, the Supreme Court explained that "this does not mean merely that they have all suffered a violation of the same provision of law. ... [Rather,] [t]heir claims must depend upon a common contention ... [which] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation and internal quotation marks omitted). In short, commonality requires a showing that there is "some glue" holding the claims together. *Id.* at 352. However, plaintiffs seeking to demonstrate commonality under Rule 23(a)(2) need not show that common questions "predominate" over individual questions as required under Rule 23(b)(3); indeed, "even a single common question will do." *Id.* at 359 (citations and alterations omitted).

Plaintiff argues that proposed class members' claims turn on common facts – namely, "the conditions of confinement uniformly imposed pursuant to Defendants' uniform policies and practices." ECF No. [108] at 12. And that the claims of all members of the proposed class turn on common questions of law – namely, "whether the proposed class members' exposure to those common conditions of confinement constituted cruel and unusual punishment." *Id.* Within this overarching complaint, Plaintiff contends that there are numerous legal and factual questions common to the class, such as questions: (1) identifying Defendants' policies or practices (e.g., whether Defendants had and/or still have a persistent and wide-spread practice of depriving passengers sufficient water during transportation); (2) identifying the conditions of proposed

class members' transport (e.g., whether the proposed class members, during their transportation, had sufficient opportunity to enter air conditioned areas); and (3) determining whether a constitutional violation had occurred (e.g., whether Defendants violated the constitutional rights of the proposed class members by transporting them in the prisoner-cage-equipped vans for more than 24 hours at a time through locations that had outdoor temperatures of at least 80 degrees Fahrenheit). *Id.* at 18-19.

Defendants dispute that Plaintiff has satisfied the commonality requirement, contending that the conditions of proposed class members' transports may have varied.  ECF No. [130] at 15.  Defendants' point is misguided, as Plaintiff's claims are focused on USC's policies or practices relating to transporting individuals.  Those policies and practices exposed transportees to the same risks.  To illustrate this point, the Court in *Hoffer v. Jones*, offered the following hypothetical:

> Consider, for instance, a prison policy that states that every inmate with a broken bone must wait five years before they are treated. Under Defendant's logic, inmates subject to that policy could not initiate a class action to change the policy because each inmate suffers from individualized conditions. That, of course, would be pure applesauce. Although each inmate may be differently situated (e.g., one may have a broken toe, and another a broken rib), they each suffer from the same injury: being subject to the five-year delay.

323 F.R.D. 694, 697–98 (N.D. Fla. 2017).

Defendants' better argument is that Plaintiff has failed to identify a policy to which every class member was subjected.  ECF No. [130] at 15.  The Supreme Court addressed this issue in *Wal-Mart* and clarified the contours of the commonality requirement.  In that case, current and former employees sued Wal–Mart on behalf of 1.5 million members of a class, alleging that the company had denied them equal pay or promotions on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964.  The employees contended that Wal-Mart provided local managers with undue discretion over pay and promotion and had "a strong and uniform

corporate culture" permitting bias against women.   *Wal–Mart,* 564 U.S. at 345.   This, the plaintiffs alleged, resulted in a common discriminatory practice that impacted every female employee.  *Id.*

The Court determined that the employees' claims lacked commonality and therefore decertified the class.  The Court explained that commonality could conceivably be established by "significant proof that [defendant] operated under a general policy of discrimination."  *Id.* at 353 (quotations omitted).   But without proof of a system-wide policy acting as "glue" to hold thousands of highly individualized employment decisions together, the Supreme Court could not find that the class would "generate common answers apt to drive the resolution of the litigation." *Id.* at 350-52.

In civil rights cases post–*Wal–Mart,* courts have found the commonality requirement to be satisfied by proof of the existence of systemic policies and practices that allegedly expose putative class members to a substantial risk of harm.  *See e.g.*, *Lippert v. Baldwin*, No. 10 C 4603, 2017 WL 1545672, at *5 (N.D. Ill. Apr. 28, 2017) (commonality satisfied where expert report identified nine policies and practices depriving prisoners of access to adequate healthcare based on eight site visits, interviews with staff and inmates, review of institutional documents, review of medical records, including death records and mortality reviews); *Braggs v. Dunn*, 317 F.R.D. 634, 657 (M.D. Ala. 2016) (commonality satisfied as to class of prisoners alleging insufficient mental health treatment where plaintiffs' "experts point to very concrete policies and practices—such as using unsupervised and unqualified nurses to conduct intake screenings, or placing prisoners with serious mental illness in prolonged segregation—that undisputedly occur or that plaintiffs have offered considerable evidence (often in the form of admissions by [Defendant's] administrators) to show are widespread"); *Parsons v. Ryan*, 754 F.3d 657, 683

(9th Cir. 2014) (commonality satisfied as to class of prisoners alleging insufficient medical, dental, and mental health care, and conditions of confinement where plaintiffs submitted to the district court four thorough and unrebutted expert reports, hundreds of internal ADC documents, and declarations by the named plaintiffs).

Here, Plaintiff claims that "[a]s a result of Defendants' uniform failure to implement policies or procedures concerning the provision of water to detainees, or the ability of detainees to seek shelter in cooler areas in hot conditions, coupled with the uniformly deficient nature of Defendants' fleet of vans, modified to contain the same metal prisoner cages, inefficient air conditioning and ventilation systems, Plaintiff and the other members of the proposed class were all uniformly exposed to excessively hot conditions." ECF No. [108] at 8. The Court must dive deeper than Plaintiff's allegations and consider the evidence at hand of USC's actual policies or procedures.

Regarding USC's written policies, pursuant to the Prisoner Transportation Manual, scheduled restroom breaks were conducted at secure facilities every four hours. ECF No. [135-2] at 43. Additionally, all meals were required to be provided in route using a drive through service, with a feeding time schedule of 0600-0800 hours, 1200-1400 hours, and 1800-2000 hours. *Id.* at 43-44. Meal breaks were conducted only in secure facilities. *Id.* at 44. The Prisoner Transportation Manual contained no policy regarding how often pretrial detainees were provided water. *Id.* at 77:14-24.

As to USC's unwritten policies or practices, John Stirling testified that apart from the scheduled breaks at secure facilities, the vehicles only stopped to get gas. ECF No. [110-1] at 76:22-77:3. According to Stirling, the length of time it takes to travel from one secure facility to another depends on the area of the United States, and that on at least one occasion it took almost

an entire day to arrive at a secure facility where the prisoners could take a break.  *Id.* at 87:18-88:4.  Stirling also testified that USC's vans with prisoner cages had uniform ventilation systems and that the prisoner cages were equipped with an equal number of air vents.  *Id.* at 47:12-22.  Groover testified that the van he travelled in during the August 2015 Transport had a small air vent located within approximately one foot or one-and-a-half feet from his head.  ECF No. [110-2] at 40:7-18.  When the driver would turn up the air it would get louder but no more air would flow out.  *Id.* at 41:6-14.[4]

The Court finds that Plaintiff has provided sufficient proof of the existence of a systemic policy and practice by USC that exposed putative class members to harm.  The critical unrebutted testimony before the Court is that prisoners were transported in cages in vans with uniform ventilation system, prisoners were only permitted breaks from the heat during stops at secure facilities, and no policy existed regarding how often or how much water to provide prisoners.  Accordingly, Plaintiff has satisfied the commonality requirement.

### iii.  Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[T]he typicality requirement is

---

[4] Plaintiff's Motion also cites to news articles related to the prisoner transportation industry generally.  *See* ECF No. [108] at 2-4.  According to Plaintiff's Motion, two of the articles address the conditions in the vans operated by Defendants.  *Id.* at 3 n.5.  However, after filing the Motion, Plaintiff clarified that the author of *The Horrible Things I Saw Driving a Van Packed With Prisoners: Dehydrated, hungry prisoners defecating on themselves*, "never drove vans for U.S. Corrections, LLC and thus lacks personal knowledge of the policies or procedures of U.S. Corrections, LLC for transporting detainees in vans or of the conditions of confinement in U.S. Corrections, LLC's vans" and his "knowledge of driving prisoner transport vans (and of the conditions of confinement in such vans) is limited to his experience driving USG7, LLS's vans …"  ECF No. [199] at 3.  Plaintiff quotes the other article, *Inside the Deadly World of Private Prisoner Transport*, for the proposition that "guards travel up to weeks at a time along circuitous routes, typically picking up and dropping off prisoners in 15-passenger vans or sometimes minivans retrofitted with interior caging and darkened windows.  ECF No. [108] at 3 n.5.  But that sentence does not refer to USC (or PTS) specifically, and in any event, is not evidence of a policy or practice that Plaintiff is claiming to be unconstitutional.

permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft,* 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citing *Brown v. SCI Funeral Servs. of Fla., Inc.,* 212 F.R.D. 602, 605 (S.D. Fla. 2003)). In order to demonstrate typicality, the plaintiff must generally demonstrate that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Washington,* 959 F.2d at 1569 n. 8). Stated differently, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams,* 568 F.3d at 1356–57 (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)).

Plaintiff argues that the typicality requirement is satisfied here because Groover and all members of the proposed class were transported by USC under the conditions of confinement mandated by USC's uniform policies and practices. Plaintiff represents that all members of the proposed class are advancing the same legal theory — that their constitutional rights were violated when they were transported under those conditions. Defendants insist, similar to their argument with respect to commonality, that the typicality factor has not been satisfied because of the differences in circumstances between Groover's August 2015 Transport and the transports of other members of the proposed class.[5]

---

[5] Defendant also contends that Groover does not share the same interests as the proposed class because Groover was an incarcerated inmate and must therefore show that the alleged conditions amounted to cruel and unusual punishment to have a constitutional claim, whereas members of the proposed class who are pretrial detainees need only show a due process violation. The Court's determination that Groover was transported in his capacity as a pretrial detainee disposes of this argument.

Case No. 15-cv-61902-BLOOM/Valle

As to Defendants' first argument – demonstrating typicality does not require showing that there are no factual variations between the claims of the named Plaintiff and those of the proposed class.  Rather, if Groover's claims are based on the same legal theory as the claims of the other class members, it will suffice that Groover's injuries arise from the same course of conduct that gives rise to the other class members' claims.  Here, Groover's claims and the claims of the proposed class are founded upon the legal theory that USC violated Section 1983 by transporting pre-trial detainees in conditions that violated the Eighth and Fourteenth Amendments. Additionally, the alleged injuries suffered by Groover arise from the same conduct that gave rise to the claims of the other class members, namely, USC's policies and practices that subject transportees to unconstitutional conditions.  For purposes of the typicality inquiry, the fact that some class members may have faced differences in the conditions of their transport, such as sharing the van with varying amounts or types of prisoners or variations in outdoor temperature is not determinative.  Groover must only show that his claims are typical, not that the individual facts underlying his claims are identical to those of those of all other class members. The Court is satisfied that Groover's claims are typical of those of the class as a whole. Therefore, Groover has satisfied Rule 23(a)(3).

### iv.  Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'"  *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181,

1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck,* 202 F.R.D. 310, 314–15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir. 1987) ("The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule 23(a)(4) most often has been described to involve questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class.").  In addition, "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC,* 662 F.3d 913, 918 (7th Cir. 2011); *but see Busby,* 513 F.3d at 1323–24 ("[O]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status.") (quoting *Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927, 932 (7th Cir. 1972)).  "[T]he Court is required to evaluate any conflicting interests of the class representative and the adequacy of class counsel." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 464 (S.D. Fla. 2002).

In this case, the Court finds no conflict of interest between Plaintiff and the members of the putative class.  Likewise, no conflict between Plaintiff's counsel and the putative class members is apparent here and Defendants do not suggest anything to the contrary.  In support of the Motion, Plaintiff's counsel submitted declarations wherein they outline their litigation experience, including extensive experience in class-action litigation.  The Court, therefore, finds that Plaintiff's counsel can adequately prosecute this action on behalf of the entire class.

Plaintiff has, therefore, satisfied the adequacy requirement of Rule 23.   Having met all four requirements of Rule 23(a), the Court will determine whether Plaintiff satisfied the criteria of Rule 23(b).

### D.  Rule 23(b)(3)

To obtain class certification, Plaintiff must satisfy one of the three requirements enumerated in Rule 23(b).[6]   Plaintiff seeks to certify the class under Rule 23(b)(3), which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   When analyzing predominance and superiority, the Court may consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

### i.  Predominance

The Eleventh Circuit has characterized the predominance requirement as "perhaps the central and overriding prerequisite for a Rule 23(b)(3) class."   *Vega*, 564 F.3d at 1278.   To satisfy this requirement, "'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only

---

[6] Because Plaintiff does not have standing to assert a claim for injunctive or declaratory relief a class cannot be certified under 23(b)(2).

to individualized proof.'" *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557-58 (11th Cir. 1989)).  The focus of this inquiry is on "the legal or factual questions that qualify each class member's case as a genuine controversy," making the showing "far more demanding" than the requirement of commonality in Rule 23(a)(2).  *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).  "[C]ommon issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'"  *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788–91 (11th Cir. 2014) (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir. 1996)).

Plaintiff argues that predominance has been established because determining whether the policies and practices are unconstitutional is an issue susceptible to resolution in one stroke class-wide, by asking the same questions of law and fact concerning the same conditions of confinement uniformly experienced by each proposed class member.  Plaintiff points to "common questions," as described in the Commonality section above, that underlie the claims of all proposed class members.  Plaintiff argues that those questions predominate over any questions affecting individual members of the proposed class.  Defendants counter that assessing liability as to members of the proposed class would require individualized determinations, defeating the predominance requirement.  Defendants contend that a myriad of issues would require individual inquiries, such as which van was used for transport, how the air conditioner was configured in the van, what the temperature was inside the van, how many inmates were onboard the van, how frequently the van stopped, and how much water was provided.

USC's liability is premised on violations of 42 USC § 1983.  A claim under § 1983 has "two essential elements.  First, the conduct complained of must have been committed by a person acting under color of state law.  Second, the plaintiff must allege that this conduct deprived him of his rights, privileges, and immunities secured by the Constitution or the laws of the United States.  *Quinoes v. Durkis*, 638 F. Supp. 856, 859 (S.D. Fla. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).  As the Eleventh Circuit stated in evaluating Groover's claims for violation of his constitutional rights under the Eighth and Fourteenth Amendments:

> Although a prisoner or detainee's exposure to hot, uncomfortable temperatures certainly is not *per se* unconstitutional, there is a point where exposure to extreme heat without adequate cooling or ventilation can give rise to a constitutional claim given the health and safety risks associated with exposure to high temperatures. *See Chandler*, 379 F.3d at 1294-95; *Gates v. Cook*, 376 F.3d 323, 339-40 (5th Cir. 2004). To determine whether a condition is sufficiently extreme, we must consider "both the severity and the duration of the prisoner's exposure to inadequate cooling and ventilation." *Chandler*, 379 F.3d at 1295 (internal quotation marks omitted). As part of this inquiry, we look to factors such as whether: at the hottest times of day it was cooler inside than outside; there was a ventilation system that effectively managed air circulation and humidity; or there were other conditions that alleviated rather than exacerbated the heat, including the availability of running water and the opportunity to enter air conditioned areas. *Id.* at 1297-98.

ECF No. [19] at 8.

This Court finds that proposed class members' claims will rise or fall on the highly case-specific factual issues identified by the Eleventh Circuit, and other related factual issues. Specifically, to assess liability as to each proposed class member, the Court would need to make a number of individualized determinations, including whether at the hottest time of the day it was cooler inside the van than outside, how often and how much water the individual was provided, how frequently the van stopped to allow breaks and for how long a period of time.  Stirling's deposition testimony demonstrates some of the crucial individual assessments that the Court would need to make to assess liability.  For example, Stirling testified that in his personal

experience as a driver for USC he sometimes would try to pass water through the cages to prisoners and that during restroom breaks he permitted prisoners to drink as much water as they liked.  ECF No. [110-1] at 88:6-13, 111:20-23.  Thus, it seems that how often and how much water a proposed class member was provided on any given transport will depend, in part, on who happens to be driving the van.  This is one of a host of individualized inquiries that the Court would need to make with respect to the transport of each proposed class member.

These individualized determinations would result in mini-trials that would make managing the class action untenable.  Considering the proof necessary to establish whether USC violated the constitutional rights of proposed class members, the Court finds that individualized inquiries would overwhelm the common issues in this lawsuit.  *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (case-specific inquiries into the facts surrounding each alleged incident of discrimination predominated over whether defendant has a practice or policy of racial discrimination.)

Additionally, there exist individualized issues as to proposed class members' damages.  Although the Eleventh Circuit has held that individualized damages issues will seldom upset a case otherwise suited for class certification, "[i]t is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification."  *Owner-Operator Ind. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004)).  Because individualized issues predominate as to liability, and assessing damages would require individualized proof and calculation, Plaintiff has failed to demonstrate that common questions indeed predominate over individual ones.  As such, Plaintiff has failed to satisfy the predominance requirement.

Case No. 15-cv-61902-BLOOM/Valle

## IV.    CONCLUSION

As described above, Plaintiff lacks standing to pursue a claim for injunctive and declaratory relief, and therefore, the Court cannot certify a class under Rule 23(b)(2). Additionally, Plaintiff has failed to demonstrate that a class is ascertainable and has failed to satisfy the predominance requirement, thus the Court cannot certify a class under Rule 23(b)(3). Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification, **ECF No. [108]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of December, 2018.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record