UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-61902-BLOOM

JEFFREY EMIL GROOVER,
individually and on behalf of all
others similarly situated,

        Plaintiff,

v.

U.S. CORRECTIONS, LLC; and
PRISONER TRANSPORTATION
SERVICES, LLC,

        Defendants.
_____/

### PLAINTIFF'S *DAUBERT* MOTION TO STRIKE AND EXCLUDE DEFENDANT U.S. CORRECTIONS, LLC'S EXPERT AUBREY LAND

Pursuant to Federal Rules of Evidence 702 and 403 and the Court's Scheduling Order dated October 17, 2018 (ECF No. 198), Plaintiff submits this motion to exclude the testimony of Defendant U.S. Corrections, LLC's ("USC") expert Aubrey Land (the "Motion").

### INTRODUCTION

USC intends to offer expert opinion at trial from a former correctional officer named Aubrey Land.[1]  However, as demonstrated by Mr. Land's expert report and the testimony he provided at deposition in this matter, Mr. Land's opinions will not assist the trier of fact in understanding the evidence or determining any fact in issue. Mr. Land's work is not scientific, technical, or specialized. It is not that of any disciplined analysis, nor is it based on an adequate or reliable factual foundation.  Rather, Mr. Land's opinions are the product of his own subjective determinations as to Plaintiff's credibility, an incomplete and incorrect factual foundation, and improper legal conclusions. Because Mr. Land's testimony would not assist

---

[1]    A copy of the transcript of Mr. Land's deposition taken in this matter on November 5, 2018, together with all exhibits thereto, is being filed concurrently herewith.  Mr. Land's expert report in this matter, produced by USC on August 14, 2018, the day of the expert disclosure deadline, is attached at pages 001-017 (red upper right-hand corner pagination) of Composite Exhibit "2" to Mr. Land's deposition transcript.

the trier of fact to understand the evidence – and would actually have the inverse effect of confusing the jury – Mr. Land's opinions are not admissible expert testimony under Rule 702 and would be unduly prejudicial to Plaintiff pursuant to Rule 403. Accordingly, the Court should exclude Mr. Land's testimony at trial.

## ARGUMENT

"A trial court, in determining the admissibility of expert testimony under Rule 702, must conduct a rigorous three-part inquiry." *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County Fla.*, 402 F.3d 1092 (11th Cir. 2005). Federal Rule of Evidence 702 provides the circumstances under which a person qualified as an expert should be permitted to offer their opinions at trial. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Purported expert testimony "must be supported by appropriate validation" or "good grounds, based on what is known." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (internal quotations omitted). Thus, *Daubert* requires that expert testimony be both reliable and relevant.

The *Daubert* court enumerated four non-exclusive factors to aid trial judges in their analysis: 1) whether a theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publications; 3) the technique's known or potential rate of error; and 4) the general acceptance of the theory or technique by the relevant scientific community. *Id.* at 591-94. "The focus, of course, must be solely on

principles and methodology, not on the conclusions that they generate." *Id.* at 594. The Eleventh Circuit has articulated the *Daubert* test as prescribing three conditions for the admissibility of expert testimony: 1) the expert is qualified to testify competently regarding the matters he intends to address; 2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and 3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chemicals, Inc.,* 158 F.3d 548, 562. (11th Cir. 1998); *see also Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1357 (N.D. Ga. 1999). Under this test, an expert's testimony will only be admissible if all three of these factors are satisfied. If an expert's testimony fails to meet any part of this three-part test, then a court should exclude it.

In this case, Mr. Land's testimony fails all three parts of the test.

I. **Mr. Land is Not Qualified to Offer Expert Opinion in this Matter**

First, Mr. Land lacks the necessary qualifications to offer the opinions he attempts to offer in this case.

Mr. Land is a former corrections officer. *See* Land Depo. Tr., Comp. Ex. 2 at 024-027 (Curriculum Vitae of A. Land). He does not and has never worked in the private prisoner transportation industry. *See id.*; *see also* Land Depo Tr. at 39:10-12. According to his curriculum vitae, Mr. Land has never received any advanced specialized training or taken any courses concerning the transportation of inmates in motor vehicles. *See* Land Depo. Tr., Comp. Ex. 2 at 024-025; *id.* at 20:25-21:5. Although Mr. Land testified that he transported prisoners in motor vehicles over short distances when he worked for a corrections department nearly two decades ago, he could only recall one occasion on which he ever transported a prisoner in excess of twenty-four hours. *Id.* at 21:21-24:7. Mr. Land is not a medical doctor, nor is he otherwise medically qualified to testify concerning the effects on the human body caused by the conditions at issue in this case. *Id.* at 79:17-20. He has received no training pertaining to the civil rights afforded by the Eighth Amendment to the U.S.

Constitution. *Id.* at 33:5-25. He has not conducted a single study, written a single publication, performed a single minute of research, or relied upon a single peer-reviewed source with respect to a single one of the matters he claims to be qualified to testify to the jury about at trial – including such matters as the transportation of prisoners in motor vehicles, the adequacy of air conditioning in the interior of motor vehicles, the effects of extreme heat on the human body, or even the private prisoner transportation industry generally. *Id.* at 37:11-39:12.

Mr. Land is so unqualified to testify as an expert in this matter that he felt the need misrepresent his expert-witness experience in the expert report submitted in this case. Indeed, the report prepared by Mr. Land in this case contains verifiably false statements concerning the matter sitting atop the list of cases in which he claims to have testified as an expert witness at trial. Specifically, Section II of the qualifications and experience supplement to Mr. Land's expert report submitted in this matter states, in pertinent part and under penalty of perjury, as follows:

> <u>I testified as an expert at trial in Cummings VS Florida Department of Corrections, officials, Case # 4:07cv428-RH/WCS</u>, in my official capacity as the law enforcement investigator in this case. I was subpoenaed by the Florida Attorney General to testify in the United State District Court for the Northern District of Florida. During my testimony I was allowed to offer options based on the evidence and my findings See attached Exhibit B[2]

Land Depo. Tr., Ex. 2 at 19. Mr. Land recently submitted an expert report in another civil rights action titled *Trevino v. Nocco, et al.*, No. 8:16-cv-02545-CEH-TGW (M.D. Fla.). *See* Exhibit "A" hereto (copy of A. Land's report in *Trevino*). When Mr. Land was deposed in the *Trevino* matter, Mr. Land admitted that he had not been found qualified to testify as an expert in the *Cummings* matter but rather had provided testimony as a fact witness (concerning an investigation he had performed pertaining to the underlying facts alleged in the action, prior to the filing of the action):

---

[2] There was no Exhibit B attached to Mr. Land's report or the supplement concerning his qualifications and experience.

4

> Q. So have you looked at any other authoritative materials to support your conclusions in this case; in other words, a training manual of some sort, a video, anything outside of what you just have in terms of your personal experience, to formulate your opinion?
>
> A. I have looked at the totality of the circumstances and the information that has been submitted to me to review, and that's what I base my opinions on.
>
> Q. Okay. So there is no authoritative books, manuals, videos, anything like that, you have relied upon?
> A. No, sir.
>
> Q. Have you ever testified as a corrections expert in a federal courtroom?
> A. In a federal courtroom?
>
> Q. Yes.
> A. I testified years ago as an inspector on a use of force incident in federal court, and I first said I thought I was -- that the judge allowed me to testify as an expert. He did allow me to testify to some opinions, but, going back over the transcript of it, <u>he did not actually qualify me as an expert</u>.
>
> Q. Okay. And what case was that?
> A. <u>Cummings versus the Florida Department of Corrections</u>.
> . . .
>
> Q. Okay. Has there ever been any court order entered that would have not permitted you to testify other than, you said -- you mentioned this Cummings case?
>
> A. Yes. And in the Cummings case, I thought that Joe Belitzky, who was the Assistant Attorney General, had did that, but after I got them to go back over and look at it, it was just that I did offer some opinions, but I did not -- <u>I was not qualified as an expert in that case</u>.

*See* Transcript of Deposition dated Jan. 29, 2018 in *Trevino v. Nocco, et al.*, attached as Exhibit "B" hereto, 152:20-155-2 (emphasis added). Nonetheless, in his report in this case, prepared just eight months after his deposition was taken in *Trevino*, Mr. Land chose to falsely represent that he had testified as an expert witness in the *Cummings* matter. *See* Land Depo. Tr., Ex. 2 at 19. And when Plaintiff's counsel asked him at deposition in this case about whether he had testified as an expert witness in the *Cummings* matter, Mr. Land stated that he had (when he had in fact not):

5

> Q. Everything under section two here is your experience testifying as an expert witness that you provided in connection with your report; correct?
> A. Correct.
>
> Q. Okay, the first item is -- it says, "I testified as an expert at trial in Cummings vs. Florida Department of Corrections Officials, case 4:07cv428 in the Northern District of Florida; right?
> A. Right.
>
> Q. That's a false statement, isn't it, Mr. Land?
> A. No, it is not a false statement.
>
> MS. JACKSON: Object to the form.
>
> Q. You testified as an expert in that case?
> A. I gave -- I gave -- I was able -- the judge allowed me to provide -- to express opinions in that case.

Land Depo. Tr. at 134:6-23.

And although Mr. Land testified at great length at deposition about how he finds Plaintiff's testimony in this case not credible (and how that finding improperly served as the basis for the opinions set forth in this report), *see, e.g., infra* at Section II, at pp. 9-13, the only one who has provided verifiably false testimony at deposition in this case is, ironically, Mr. Land. Because Mr. Land is not even qualified to testify about his own qualifications, he is certainly not qualified to testify to a jury at trial about matters as important as those identified in his report.

Mr. Land is plainly unqualified, and his testimony should be excluded.

II. **Mr. Land's Opinions are Unsubstantiated by an Adequate Factual Basis, are Based Entirely on his Own Credibility Determinations, and are Plainly not the Product of any Sufficiently Reliable Methodology**

Second, Mr. Land's opinions are unreliable because they lack an adequate factual or evidentiary foundation, are premised entirely on credibility determinations made after a cursory review of Plaintiff's deposition transcript, and lack any sufficiently reliable methodology.

For one thing, Mr. Land failed to consider critically important evidence in the record and instead relied entirely upon cherry-picked materials provided to him by USC. Mr. Land

6

did not inspect let alone consider the actual van in which Plaintiff was transported in August 2015 in forming his opinions in this case. Instead, he relied upon inspections he performed of vans owned and operated by USC's co-defendant Prisoner Transportation Services, LLC ("PTS"). Mr. Land did not consider the actual van in which Plaintiff was transported, or Plaintiff's medical records, or any testimony from USC employees or any other person besides Plaintiff and Mr. Stirling. *See* Land Depo. Tr. at 79:21-83:9; 88:12-89:18.  He did not consider these materials because USC did not ask him to consider them, and because he did not ask to review them. *See id.* at 79:21-25 ("Q. Okay, and the only materials that you reviewed in connection with this matter and with preparing your report were the materials provided to you by U.S. Corrections; correct? A. That is correct.").

In forming his opinions concerning Van 423 and Plaintiff's experience in the van in August 2015, Mr. Land took to Google to seek out photos, technical specifications, and other information (none of which was in the record in this case) concerning, *inter alia*, the type of Chevrolet Express van in which Plaintiff was transported and the air conditioning unit that USC had told him had been installed in the van, via pictures Mr. Land was provided but had no idea the source of. *E.g., id.,* Comp. Ex. 5 at 185-188 (photos of AC unit for a van believed to be Van 423); *id.,* Ex. 7 at 1-2 (photos of random van found on Internet).  Mr. Land also considered materials and assumed facts that he had been told pertained to Van 423 but which we now know have nothing whatsoever to do with Van 423.

For instance, in forming his opinions, Mr. Land considered a receipt purportedly reflecting that air conditioner repair work had been performed on Van 423 approximately one to two months before Plaintiff was transported by USC in Van 423 in August 2015. *See* Land Depo. Tr., at 100:2-102:9 (referencing *id.,* Comp. Ex. 5 at 110). USC had provided Mr. Land the receipt and told him it pertained to Van 423, the van in which Plaintiff had been transported in August 2015. The problem is that the work reflected on the receipt did not

7

actually pertain to Van 423, but rather pertained to a van assigned VIN number ending in 858.[3] *See* ECF No. 210 at 4 (discussing the Pepboys receipt in detail).

Mr. Land's report also relied upon dozens of fast food restaurant and gas station receipts (and a log sheet of those receipts) produced by USC in this matter, receipts which the company had told Plaintiff and Mr. Land reflected food and beverage purchases made by USC's employees to provide nourishment to Plaintiff and his co-passengers aboard Van 423 in August 2015. *See* Land Depo. Tr. at 128:24:129:13; *id.*, Comp. Ex. 5 at 183. The problem is that, after Mr. Land had prepared his report, it was later revealed that these receipts had nothing to do with purchases made by the drivers of Van 423, let alone in August 2015. *See* ECF No. 210 at 4 (discussing the gas station and fast food receipts in detail). In response to Requests for Admission served by Plaintiff, USC has admitted that none of these receipts produced to Plaintiff and relied upon by Mr. Land actually pertained to Van 423 or to Plaintiff's transport – not the Pepboys receipt or any of the fast food or gas station transaction receipts. *See* Exhibit "C" hereto, at 3-4 (responses to Requests for Admission Nos. 2 and 7). Upon learning this information, Mr. Land testified that his opinions might have been different had he known it prior to the preparation of his report. *See id.* at 129:14-130: 14.

Additionally, Mr. Land based his opinions based on erroneous factual assumptions that were fed to him by USC's counsel concerning the "prisoner cage" in which Plaintiff was transported inside Van 423 in August 2015. USC's counsel Ashley Tinsley told Mr. Land that a company called American Aluminum Accessories, Inc. had manufactured the cage in which Plaintiff was confined during his transport in August 2015. *Id.*, Comp. Ex. 2 at 111 (email

---

[3] Before the receipt was produced to Plaintiff in this litigation and to Mr. Land to prepare his report in this matter, someone had crossed out the number "858" on the receipt and wrote "423" prior to producing it to Plaintiff's counsel in this litigation. *See* ECF No. 210 at 4 (discussing the Pepboys receipt in detail). Plaintiff's counsel discovered that the work reflected on the receipt was not performed on Van 423 by comparing USC's GPS records for Van 423 together with receipt. At the date and time reflected on the receipt, Van 423 was not at the Pepboys location reflected on the receipt. Van assigned VIN number 858 was at that location, however.

from A. Tinsley to A. Land); *id.*, Ex. 6 (photos of American Aluminum cage purportedly used in Van 423). Mr. Land considered American Aluminum photos and statements on the webpage sent to him by Ms. Tinsley and drew on his experience concerning the company in reaching the opinions set forth in his report. *Id.,* Ex. 8 at 017 (A. Land's notes reflecting reliance on A. Tinsley's representation concerning American Aluminum cages). As it turns out, the prisoner cage in Van 423 when Mr. Groover was transported was not manufactured by American Aluminum. *See* Exhibit "D" hereto (USC's denial to Request for Admission No. 3, which seeks an admission that Van 423 had such a cage installed during Plaintiff's transport). Again, Mr. Land's opinions are based on evidence and assumptions lacking any basis in fact.

Mr. Land's opinions are also based, in substantial part, on temperature recordings taken by Mr. Land of the interior and exterior of those PTS-owned and operated vans on dates he did not record and cannot remember, at times of day he did not record and cannot remember, and in outdoor temperatures he did not record and cannot remember. *See* Land Depo. Tr., Comp. Ex. 5 at 114-172 (photos of temperature readings); *id.* at 115:15-124:5 (discussing temperature readings and inability to determine date, time, or outdoor temperature at time of readings). Although Mr. Land recorded these temperatures with a thermal laser gun, he submits no information concerning any training he received to operate such a device, nor has he produced any records or other information reflecting the accuracy of, the last date of calibration or servicing of, or any other relevant information concerning the reliability of the device or the temperature readings it recorded (again, on days, at times, and in temperatures he did not record and cannot recall). He made no attempt to verify his opinions through any means, be it by confirming the correctness of the facts and assumptions underlying his conclusions, by testing or comparing to other cases, or by reference to peer reviewed articles reaching the same conclusion on similar facts. This is no methodology at all, let alone one reliable enough to satisfy the criteria of *Daubert*. *See, e.g.,* Land Depo. Tr. at 141:6-9 ("Q. Was there any technical, scientific, or

9

other specialized knowledge that you employed in forming your opinions in that regard? A. Run that by me one more time.").

Still other opinions reached by Mr. Land were based on materials he reviewed but that were not attached to his report, such as a "Prisoner Transport Services Training Curriculum." *See id.* at 102:10-103:9.

Apart from the unsubstantiated facts and assumptions and outright misinformation pertaining to Van 423, as well as the bogus temperature readings collected from PTS's vans – all of which Mr. Land relied upon in forming his opinions as set forth in his report – the remainder of Mr. Land's opinions are based entirely on <u>his understanding of the facts</u>, formed from <u>his own</u> <u>determinations as to the credibility of Plaintiff's testimony at deposition and of the veracity of Plaintiff's allegations in the Complaint</u>. In fact, according to Mr. Land, he's qualified to determine the credibility of Plaintiff's testimony at deposition and the veracity of Plaintiff's allegations in the Complaint because he's "the finder of facts and a reporter of the truth" in this case. *Id.* at 64:20-25 ("You got to understand something. What my job is, is a finder of facts and a reporter of the truth. It don't matter if you hire me, if -- who hires me. The facts remain the same. I look at the facts, and I report the truth as I understand."). When Plaintiff's counsel inquired further, Mr. Land flip-flopped on the assertion that he is the "finder of fact" but stood by his statement that he is the "reporter of the truth":

> Q. You do understand that the finder of fact in this case is the jury; correct?
> MS. JACKSON: Object to the form.
> A. Ultimately, if it goes to a jury trial, then they will be the ones that determine what you provide as facts, what the defense provides as a fact, what -- if I'm called in there to testify what I testify to. They're going to look at the totality of all the information, and then they're going to make a final decision. But my job here is to review all the information available and report my findings.
>
> Q. That's actual findings because you say you're the finder of fact; right?
> MS. JACKSON: Object to the form.
> A. I look at the facts, and I report the truth.

10

> Q.    But you're not the finder of facts, are you? That's not your role today and in this case; right, Mr. Land?
> MS. JACKSON: Object to the form.
> A.    I'm not a finder of fact.
>
> Q.    You're not the reporter of the truth either, are you?
> MS. JACKSON: Object to the form.
> A.    Whoa, now, hold on just a second. Repeat that one.
>
> Q.    Your job in this case is not to be the reporter of the truth, is it?
> MS. JACKSON: Object to the form.
> A.    My job is most definitely to report the truth as I understand it from the facts.
>
> Q.    Okay, you understand that you're testifying in your capacity as an expert witness. Do you understand that, Mr. Land?
> A.    I do understand I'm testifying as an expert witness.
>
> Q.    And you understand that you have to – you have to be providing testimony that's both helpful and reliable to the Court and to a jury in resolving an issue in this case. Do you understand that?
> A.    Absolutely, and that's why the truth is the most important thing that can come out.

*Id.* at 65:3-66:21.

And because Mr. Land considers himself the "finder of fact and a reporter of the truth," or at least the "reporter of the truth" if not the "finder of fact," he used that power to find Plaintiff not very credible at deposition and to then base his opinions on that determination:

> Q.    [D]id you just find Mr. Groover not to be very credible?
> A.    Excuse me?
>
> Q.    Bottom line, did you just find Mr. Groover not to be very credible; is that right?
> MS. JACKSON: Object to the form. I don't understand the beginning, the bottom line is...
>
> Q.    So what you're saying is that after reviewing all of the information and materials provided to you in this case, including the testimony and the Complaint, you just -- you found Mr. Groover was not very credible; is that right?
> MS. JACKSON: Object to the form.
> A.    To answer your question the best that I can, no, I do not find your -- your client credible. . . .

11

Land Depo. Tr. at 73:7-23.

> A. . . . [Mr. Groover] had the ability to declare a medical emergency while in transport, and there are protocols that are in place if that were to happen.
>
> Q. Okay.
> A. Okay, your client didn't do that. He didn't even report it when he got to his destination that he had had a heat stroke. So, yes, the credibility of your client -- <u>I don't believe him</u>.
>
> Q. Okay, and so because you didn't find Mr. Groover credible along with the totality of everything else in this case, that is the basis of your opinions and conclusions in your report?
> MS. JACKSON: Object to the form.
> A. My opinions are supported by the known facts here. Your client says one thing, contradicts himself. Somebody else contradicts him. The data contradicts him. So I'm not that guy that says that if you don't tell me the truth one time you're not ever going to tell me the truth, because sometimes you find a little truth here and a little truth there and it helps put the pieces together. But there sure are a lot of things missing in your client's truthfulness.
>
> Q. And you considered -- the findings that you made concerning Mr. Groover's truthfulness served as a basis for the opinions and conclusions in your report?
> MS. JACKSON: Object to the form.
> A. Well, you want us to just go through all the opinions?
>
> Q. Well, no. I'm just asking if -- if you just answer that question, whether the -- did your findings of Mr. Groover as being not credible serve as a basis for the opinions and the conclusions in your report?
> A. Partially.

*Id.* at 75:9-76:20.

> Q. . . . But the point is that you didn't find his testimony credible, and so that's the basis of your – your findings and your opinions?
> MS. JACKSON: Object to the form.
> A. And, again, I'm going to answer that question. A portion of what he said compared to the evidence that I was allowed to review is how -- and portions of what he said that was disproved, okay. It means that I don't believe everything that this client says. And then I look at the other data, the other information, the other material. I take into consideration the totality of all the facts, and that's how I arrive at my findings and develop my opinions.

*Id.* at 83:24-84:13.

Plaintiff's credibility is obviously not a proper subject for expert testimony. "The Eleventh Circuit has made clear that '[e]xpert ... testimony concerning the truthfulness or credibility of a witness is generally inadmissible because it invades the jury's province to make credibility determinations.'" *Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 1:16-CV-23303-UU, 2017 WL 7734095, at *9–10 (S.D. Fla. July 19, 2017) (quoting *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996)). As Mr. Land himself testified at deposition, his opinions concerning USC's policies and the conditions inside Van 423 during Plaintiff's transport in August 2015 are premised almost entirely on the credibility determinations he made as to Plaintiff's account of USC's policies and the August 2015 transport. This is plainly improper under *Daubert*. Mr. Land's testimony must be excluded. *See, e.g., Pellegrino v. Wengert*, No. 15-CV-60535, 2016 WL 3678600, at *9 (S.D. Fla. July 12, 2016) (excluding expert testimony concerning the "credibility of the other witnesses" because such testimony is "not permitted"); *Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 3175445, at *2 (M.D. Ala. July 8, 2014) (finding "credibility determination [was] not sufficiently reliable to go before a jury as expert opinion"); *United States v. Falcon*, 245 F. Supp. 2d 1239, 1248 (S.D. Fla. 2003) ("Permitting Dr. Poliacoff's testimony would run contrary, to the well-established principle that, absent extraordinary circumstances, credibility determinations are for the jury, and not expert witnesses."); *Strickland v. Sec'y Dep't of Corr.*, No. 806CV2390T24MAP, 2008 WL 686162, at *10 (M.D. Fla. Mar. 10, 2008) ("[T]he Court finds that the credibility of the child witness in this case was not a proper subject for expert testimony because such credibility and veracity issues require neither specialized training and experience nor the assistance of an expert in order to determine. Therefore, the proffered testimony of Dr. Krop was not admissible[.]").

Mr. Land's report is alchemy at best. For expert testimony to be admissible, there must be some basis for verifying the reliability of an expert's opinions. *Wheat*, 46 F. Supp. 2d at 1357. As the court aptly observed in *Globetti v. Sandoz Pharma. Corp.*, 111 F. Supp.

13

2d 1174, 1177 (N.D. Ala. 2000), "[t]he point of the gatekeeping role is to separate opinion evidence based on 'good grounds' from simple subjective speculation masquerading as scientific knowledge."

Thus, expert testimony based upon evidence, data, and assumptions as erroneous and/or unsubstantiated as that which Mr. Land relied upon here is simply not reliable and must be excluded from trial. For example, in *Dale v. General Motors Corp.,* 109 F. Supp.2d 1376, 1381 (N.D. Ga. 1990), the court excluded the opinions of a mechanical engineer because the testing done involved different conditions from those present in the accident, and the expert "ha[d] not demonstrated how his theory relates to the factual situation at hand." *Id.* So too here. As Mr. Land's opinions plainly lack a sufficient factual foundation, this Court should likewise prevent his opinions from being submitted to the jury. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that opinion evidence connected to existing data only by the ipse dixit of the expert is inadmissible); *see also Cook v. Sheriff of Monroe County*, 402 F. 3d 1092, 1111 (11th Cir. 2005) (excluding expert testimony "unsubstantiated by any factual basis").

### III. Because Mr. Land Lacks any Specialized, Scientific or Technical Expertise, His Testimony Would Not Assist the Trier of Fact to Understand the Evidence or Determine a Fact in Issue

Finally, Mr. Land's testimony would not assist the trier of fact understand the evidence or determine a fact in issue.

As a threshold matter, as shown above, Mr. Land thinks that it is <u>his</u> job to find the facts in this case. It is not. Mr. Land thinks he is the "finder of facts and a reporter of the truth" in this case. Land Depo. Tr. at 64:21-22. He is not. Because Mr. Land is neither the trier of fact nor the reporter of the truth, there is thus no place for Mr. Land's testimony in this case.

Moreover, Mr. Land's opinions are unreliable and inadmissible under *Daubert* because, as set forth above, they are misinformed and fail to consider crucial evidence in

the record bearing on Plaintiff's transport and the policies used to transport him. "Expert testimony cannot be submitted to the jury unless it is accompanied by a sufficient factual foundation." *McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 657 (D. Del. 2007). Here, Mr. Land's opinions are the product of an unsubstantiated, inaccurate, and incomplete factual foundation and would thus be of no assistance to the trier of fact. *See United States v. City of Miami*, 115 F. 3d 870, 873 (11th Cir. 1997) ("Relevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion"); *see also Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 355 (S.D.N.Y. 2005) ("[A]n expert opinion inadequately informed about the factual grounding of the subject it is called to address, bears none of the hallmarks of reliability necessary for the opinion to be admissible.").

Mr. Land's testimony as to the reasonableness of USC's procedures and of the conditions inside Van 423 during Plaintiff's transport is effectively expert opinion as to the constitutionality of USC's practices and of the conditions inside the van. These are issues for the Court (not Mr. Land) to define and for the jury (not Mr. Land) to make the applicable factual findings to resolve. Mr. Land should not be permitted to usurp both of these fundamental roles with improper legal opinion testimony. *See Griffin v. City of Clanton, Alabama*, 932 F. Supp. 1357, 1358 (M.D. Ala. 1996); *see also Berry v. City of Detroit*, 25 F. 3d. 1342, 1353 (6th Cir. 1994); *Gold v. City of Miami*, 151 F. 3d 1346, 1352 n. 13 (11th Cir. 1998); *Woods v. Lecureuz*, 110 F. 3d 1215 (6th Cir. 1997) (rejecting legal deliberate indifference opinions in an 8th Amendment case). Such opinions invade the province of the jury and encourage experts to simply regurgitate legal catch phrases. In *Griffin*, the plaintiff's expert purported to be an expert in the fields of law enforcement, criminal justice and sociology/criminology, and sought to offer opinions that, *inter alia*, a group of police officers used "unnecessary and unreasonable force," and that one of the officer's conduct was "careless," "reckless," and "unreasonable." In striking the expert's affidavit, the *Griffin* court stated as follows regarding the proposed expert's opinions:

15

> In his affidavit, the "opinions" that Dr. Barker offers are merely conclusory statements designed to have legally operative effects. They implicate issues that are solely within the purview of the court and are not the proper subject of evidentiary submissions.

*Griffin*, 932 F. Supp. at 1358 (*citing Lovable Co. v. Honeywell, Inc.*, 431 F.2d 668, 674 (5th Cir. 1970)). This Court should reach the same conclusion. Mr. Land's opinions are effectively improper legal conclusions and should be stricken.

Simply put, Mr. Land's work is not scientific, technical, or specialized. It is not that of any disciplined analysis, nor is it based on an adequate or reliable factual foundation. Offering Mr. Land as an expert witness at trial would essentially be a request for the Court to simply "take his word for it" that his opinions are reliable and would be helpful. This is not the law. *See Jetport, Inc.*, 2017 WL 7734095, at *9-10 ("Muhler does not explain why his experience piloting aircrafts and managing FBOs leads him to conclude that Southwest was at fault for the collision. Instead, he asks the Court to simply 'take his word for it,' without setting forth any methodology or, alternatively, showing how his experience leads him to his conclusions, why his experience is enough to serve as the basis for his opinions, and how his experience can reliably be applied to the facts. This is not permitted under *Daubert*.") (citing *Frazier*, 387 F.3d at 1261; *Padgett*, No. CV 315-048, 2016 WL 3746671, at *4 ("A district court must do more than 'take the expert's word for it' … because *Daubert* requires trial courts to act as gatekeepers to ensure that speculative and unreliable testimony does not reach the jury"); *Graff*, No. CIV.A. 2:06-CV-68-WC, 2007 WL 6900363, at *5 (excluding expert that offered an "unsupported opinion" that reuiqred the court to "simply take his word for it"); *c.f. Fisher v. Ciba Specialty Chemicals Corp.*, No. CIV.A. 03-0566-WS-B, 2007 WL 2302470, at *7 (S.D. Ala. Aug. 8, 2007) (permitting expert testimony because "[r]ather than asking the jury to take his word for it, Kaltofen [sets forth] … his analysis and the record evidence on which it relies")).

Because Mr. Land's testimony would not assist the trier of fact to understand the evidence, it should not be admitted into evidence at trial. *See* Fed. R. Evid. 702 (expert may

only offer testimony on a subject if it will "assist the trier of fact to understand the evidence"); *Cole*, 599 F. 3d at 865 ("Where, as here, the expert's analysis is unsupported by the record, exclusion of that analysis is proper, as it can offer no assistance to the jury."); *City of Tuscaloosa*, 158 F.3d at 562; *Ancho v. Penteck Corp.*, 157 F.3d 512 (7th Cir. 1998); *McDowell v. Brown*, 392 F. 3d 1283, 1298 (11th Cir. 2004) (explaining even "a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are reliable and based on some recognized scientific method").

## CONCLUSION[4]

For the foregoing reasons, the Court should exclude Mr. Land's testimony at the upcoming trial in this action.

Dated: January 9, 2019　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　Hedin Hall llp

　　　　　　　　　　　　　　　　　　　　　　By: s/ Frank S. Hedin
　　　　　　　　　　　　　　　　　　　　　　FRANK S. HEDIN (SBN 109698)
　　　　　　　　　　　　　　　　　　　　　　DAVID W. HALL (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　fhedin@hedinhall.com
　　　　　　　　　　　　　　　　　　　　　　dhall@hedinhall.com
　　　　　　　　　　　　　　　　　　　　　　1395 Brickell Ave, Suite 900
　　　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　　　Tel: (305) 357-2107
　　　　　　　　　　　　　　　　　　　　　　Fax: (305) 200-8801

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*

---

[4] Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Plaintiff certifies that he has conferred with USC's counsel regarding the issues raised in the instant motion and USC's counsel indicated that USC opposes the relief requested herein.